# ATTACHMENT A

**KNIGHT FIRST AMENDMENT INSTITUTE**
at Columbia University

alex abdo
Senior Staff Attorney



BRETT MAX KAUFMAN
STAFF ATTORNEY

May 9, 2017

**via FedEx**

National Security Agency
ATTN: FOIA Office
9800 Savage Road, STE 6932
Ft. George G. Meade, MD 20755-6932

**via facsimile**

Central Intelligence Agency
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: (703) 613-3007

Department of State
Office of Information Programs and
   Services
A/GIS/IPS/RL, SA-2, Suite 8100
Washington, D. C. 20522-0208
Fax: (202) 261-8579

**via email**

Office of the Director of National
Intelligence
Director, Information Management Division
Washington, D.C. 20511
dni-foia@dni.gov

Department of Justice
FOIA/PA Mail Referral Unit
Justice Management Division
Room 115
LOC Building

Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

Office of Legal Counsel
Melissa Golden
Lead Paralegal and FOIA Specialist
Room 5511, 950 Pennsylvania Avenue, N.W.
Department of Justice
Washington, DC 20530-0001
usdoj-officeoflegalcounsel@usdoj.gov

United States Army
Freedom of Information Office
7701 Telegraph Road, Suite 150
Alexandria, VA 22315-3905
usarmy.belvoir.hqda-oaa-aha.mbx.rmda-foia@mail.mil


**via online submission**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843
https://efoia.fbi.gov

Office of the Attorney General
Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001
http://www.justice.gov/oip/oip-request.html

Department of Defense
Office of Freedom of Information
1155 Defense Pentagon, Room 2C757
Washington, D.C. 20301-1155
http://www.dod.mil/pubs/foi/request.html

Re:   **Freedom of Information Act Request**
      **Expedited Processing Requested**

To whom it may concern,

The Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation (the "Requesters") submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records pertaining to agency prepublication review of writings by certain former government officials. This request is related to one filed on March 3, 2016 by the ACLU and currently being litigated by the Requesters in *American Civil Liberties Union v. Central Intelligence Agency*, No. 1:16-CV-1256 (D.D.C. filed June 21, 2016).

## I. Background

Millions of current and former government employees are prohibited from publishing manuscripts that discuss their government service without first submitting the manuscripts for "pre-publication review."[1] In recent years, the prepublication-review system has become dysfunctional and politicized, resulting in escalating public and congressional concern.[2] The dysfunction and politicization of the prepublication-review system raises serious First Amendment concerns.[3]

---

[1] *See* Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process Is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTgg1j; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/pathdependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417(2015).

[2] *See, e.g.*, Michael V. Hayden, Playing to the Edge: American Intelligence in the Age of Terror 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared regardless of the content. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

[3] *See, e.g.*, Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done?*, JustSecurity, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional,

3

On March 3, 2016, the ACLU sought the release of records relating to the prepublication review procedures of 19 government agencies. That request, attached hereto as Exhibit A, is now the subject of litigation.

Records disclosed in response to the ACLU's earlier FOIA request raise new questions about the way that the prepublication-review process operates in practice. Accordingly, the Requesters now seek additional records.

## II. Records requested

The Requesters seek the following records with respect to the individuals listed below:

1. all correspondence between the government and any of the individuals listed below relating to the prepublication review *or* publication of material intended to be or actually published in their personal capacities;

2. all inter- and intra-agency correspondence relating to the prepublication review or publication of material by any of the individuals listed below that was intended to be or actually was published by any of those individuals in their personal capacities;

3. all records reflecting decisions—interim, final, and after appeal—related to the prepublication review of material published by any of the individuals listed below in their personal capacities.

We seek the above records with respect to the individuals listed below. We ask that you give priority to the processing of records relating to the publications listed underneath each named individual:

1. Michael Hayden, former NSA Director, CIA Director, and former Deputy Director of National Intellligence

    a. *Playing to the Edge: American Intelligence in the Age of Terror* (2016)

2. John Ashcroft, former Attorney General

    a. *Never Again: Securing America and Restoring Justice* (2006)

3. Jose Rodriguez, former CIA Deputy Director for Operations

---

overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

    a. *Hard Measures: How Aggressive CIA Actions After 9/11 Saved American Lives* (2012)

4. John Rizzo, former Acting General Counsel for the CIA

    a. *Company Man: Thirty Years of Controversy and Crisis in the CIA* (2014)

5. Leon Panetta, former Secretary of Defense and CIA Director

    a. *Worthy Fights: A Memoir of Leadership in War and Peace* (2014)

6. Robert Gates, former Secretary of Defense

    a. *Duty: Memoirs of a Secretary at War* (2014)

7. Hillary Clinton, former Secretary of State

    a. *Hard Choices* (2014)

8. Donald Rumsfeld, former Secretary of Defense

    a. *Rumsfeld's Rules: Leadership Lessons in Business, Politics, War, and Life* (2013)

    b. *Known and Unknown: A Memoir* (2011)

9. Glenn Carle, former CIA officer

    a. *The Interrogator: An Education* (2011)

10. Jack Goldsmith, former Assistant Attorney General and Special Counsel to the General Counsel of the Department of Defense

    a. *The Terror Presidency* (2007)

    b. *The Cyberthreat, Government Network Operations, and the Fourth Amendment* (2010), https://www.brookings.edu/wp-content/uploads/2016/06/1208_4th_amendment_goldsmith.pdf

11. John Yoo, former Deputy Assistant Attorney General

    a. *Crisis and Command: A history of Executive Power from George Washington to George Bush* (2010)

    b. *The Terrorist Surveillance Program and the Constitution* (2007)

   c. *War by other means: An insider's account of the War on Terrorism* (2006)

   d. *The Powers of War and Peace: The Constitution and Foreign Affairs after 9/11* (2005)

   e. *Rational War and Constitutional Design* (2006)

   f. *War, Responsibility, and the Age of Terrorism* (2004)

12. Ali Soufan, former FBI agent

    a. *Will a CIA Veteran's Book Save a Terrorist?* (2012)

    b. *Black Banners: The Inside Story of 9/11 and the War Against al-Qaeda* (2011)

13. Ishmael Jones (pseudonym), former CIA officer

    a. *Dismantle the CIA's Station Chief System* (2009)

    b. *Waste and Fraud at the Central Intelligence Agency* (2009)

    c. *The Human Factor: Inside the CIA's Dysfunctional Intelligence Culture* (2008)

14. Michael Morell, former Deputy and Acting Director of the CIA

    a. *The Great War of Our Time: The CIA's Fight Against Terrorism—From al Qa'ida to ISIS* (2016)

15. John Kiriakou, former CIA analyst

    a. *The Convenient Terrorist: Abu Zubaydah and the Weird Wonderland of America's Secret Wars* (2017)

    b. *Doing Time Like a Spy: How the CIA Taught Me to Survive and Thrive in Prison* (2017)

    c. *The Reluctant Spy: My Secret Life in the CIA's War on Terror* (2010)

16. Valerie Plame Wilson, former CIA operations officer

    a. *Fair Game: My Life as a Spy, My Betrayal by the White House* (2007)

17. George Tenet, former Director of Central Intelligence

6

    a. *At the Center of the Storm: My Years at the CIA* (2007)

18. T.J. Waters, former CIA officer

    a. *The Suicide Squad: CIA Mysteries* (2013)

    b. *Class 11: My Story Inside the CIA's First Post-9/11 Spy Class* (2007)

19. Anthony Shaffer, former US Army Reserve Lieutenant Colonel

    a. *Operation Dark Heart* (2010)

20. Kevin Shipp, former CIA officer

    a. *From the Company of Shadows* (2012)

    b. *In From the Cold: Secrecy and Operations. A CIA Officer's True Story* (2010)

21. John Nixon, former CIA analyst

    a. *Debriefing the President: The Interrogation of Saddam Hussein* (2016)

22. James Mitchell, former CIA contractor

    a. *Enhanced Interrogation: Inside the Minds and Motives of the Islamic Terrorists Trying to Destroy America* (2016)

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B).

### III. Application for Expedited Processing

The Requesters seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the documents sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

7

*A. The Requesters are primarily engaged in
disseminating information in order to inform the public
about actual or alleged government activity.*

The Requesters are "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute was established to perform. *See, e.g.*, among others, *ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The ACLU is similarly "primarily engaged in disseminating information" within the meaning of FOIA. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See id.*[4]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 620,000 people. The ACLU also publishes regular updates and alerts via email to over 2.6 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.2 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking

---

[4] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

news,[5] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[6]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[7] The ACLU also regularly publishes books,

---

[5] *See, e.g.*, Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit* (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, *Justice Department White Paper Details Rationale for Targeted Killing of Americans* (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement* (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[6] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[7] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-

"know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[8] For example, the ACLU's "Predator Drones FOIA"

---

freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[8] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case

webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[9]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[10] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[11]; a summary of documents released in response to a FOIA

---

Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[9] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[10] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[11] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

request related to the FISA Amendments Act[12]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[13]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[14]

The Requesters plan to analyze, publish, and disseminate to the public the information gathered through this request at no cost.

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The documents sought are urgently needed to inform the public about actual or alleged government activity. See 5 U.S.C. § 552(a)(6)(E)(v)(II).

While agencies' pre-publication regulations are in part public, the implementation of those regulations is almost entirely invisible outside the government. The records requested here are urgently needed to allow the public to better understand the way the regulations are implemented, and to enable it to evaluate whether agencies' prepublication-review processes are effective and fair. The records would also allow the public to better understand the lawfulness of agencies' activity on a matter that closely relates to fundamental rights and gives room for abuse of discretion, impacting public trust in government. The effectiveness, fairness, and lawfulness of the prepublication-review process is a matter of significant public interest and ongoing media attention.[15]

---

[12] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[13] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/ other/statistics-nsls-produced-dod.

[14] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[15] *See, e.g.*, Thomas Reed Willemain, *A Personal Tale of Prepublication Review*, Lawfare, Jan. 10, 2017, https://www.lawfareblog.com/personal-tale-prepublication-review; Nada Bakos & John Nixon, *The CIA Is Delaying Our Books' Publication, and That Hurts Our Democracy*, Wash. Post, Dec. 22, 2016, https://www.washingtonpost.com/opinions/the-cia-is-delaying-our-books-publication-and-that-hurts-our-democracy/2016/12/22/068f115c-ba8c-11e6-94ac-3d324840106c_story.html?utm_term=.6c1309f097c3; David Kris, *The CIA's New Guidelines Governing Publicly Available Information*, Lawfare, Mar. 21, 2017, https://www.lawfareblog.com/cias-new-guidelines-governing-publicly-available-information; *see also supra* notes 2 and 3.

For these reasons, the Requesters are entitled to expedited processing.

## IV. Application for Waiver or Limitation of Fees

The Requesters seek a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Requesters' commercial interests. The requesters will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms—in scholarly publications, in long-form reports, and in short-form essays.

The Requesters also request a waiver of search and review fees on the grounds that they are "representative[s] of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Requesters each meet the statutory definition of a "representative of the news media" because each "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012);

*ACLU of Wash. V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at \*10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the requesters, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53 – 54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Requesters are entitled to a fee waiver.

\*   \*   \*

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email. Please direct any correspondence and responses to this request to Alex Abdo.

I certify that the above is true and correct to the best of my knowledge.

                Sincerely,

                Alex Abdo[*]
                Knight First Amendment Institute at
                  Columbia University
                314 Low Library
                535 West 116th Street
                New York, NY 10027
                alex.abdo@knightcolumbia.org
                (212) 854-9600

                Brett Max Kaufman
                Center for Democracy
                American Civil Liberties Union
                  Foundation
                125 Broad Street, 17th Floor
                New York, NY 10004
                bkaufman@aclu.org
                (212) 549-2603

---

[*] The Knight First Amendment Institute appreciates the assistance of Alexandra Sinclair, Renata Sayão, Ramya Krishnan, María Emilia Mamberti, and Jeffrey S. Stein in the drafting of this request.

14