# ATTACHMENT B

**KNIGHT FIRST AMENDMENT INSTITUTE**
at Columbia University



December 13, 2017

**via FedEx**

Headquarters Air Force / AAII (FOIA)
1000 Air Force Pentagon
Washington, D.C. 20330-1000

Commandant (CG-611)
Attn: FOIA Officer
U.S. Coast Guard
2701 Martin Luther King, Jr. Ave., SE
Stop-7710
Washington, D.C. 20593-7710

Defense Intelligence Agency
Attn: FAC2A1 (FOIA)
7400 Pentagon
Washington, D.C. 20301-7400

Department of Energy
FOIA Requester Service Center
1000 Independence Ave., SW
Mail Stop MA-46
Washington, D.C. 20585

Department of Homeland Security
Sam Kaplan
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
245 Murray Lane SW
Stop-0655
Washington, D.C. 20528-0655

FOIA Request
Department of the Treasury
Washington, D.C. 20220

Freedom of Information & Privacy Act Unit (SARF)
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

Headquarters U.S. Marine Corps
FOIA/PA Section (ARSF)
3000 Marine Corps Pentagon
Washington, D.C. 20350-3000

National Geospatial-Intelligence Agency
FOIA/PA Requester Service Center
Mail Stop S01-EGM
7500 GEOINT Drive, MS N22-SISM
Springfield, VA 22150-7500

National Reconnaissance Office
OCIO/Information Review and Release Group
14675 Lee Road
Chantilly, VA 20151-1715

Office of the Chief of Naval Operations
Department of the Navy
FOIA/Privacy Act Program Office/Service Center
Attn: DNS 36
2000 Navy Pentagon
Washington, D.C. 20350-2000

Federal Bureau of Investigation
FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Office of Inspector General
Central Intelligence Agency
Washington, D.C. 20505

Department of Defense
Freedom of Information Division
1155 Defense Pentagon
Washington, D.C. 20301-1155

National Security Agency
FOIA/PA Office
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248

Office of Information Programs and Services
A/GIS/IPS/RL, Suite 8100
U.S. Department of State
Washington, D. C. 20522-0208

**via email**

Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511
dni-foia@dni.gov

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

United States Army
Freedom of Information Office
7701 Telegraph Road, Suite 150
Alexandria, VA 22315-3905
usarmy.belvoir.hqda-oaa-ahs.mbx.rmda-foia@mail.mil

      Re:    **Freedom of Information Act Request**
                  **Expedited Processing Requested**

To whom it may concern,

    The Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation (the "Requesters") submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records pertaining to the prepublication-review requirements of Intelligence Community ("IC") agencies. This request is related to two earlier ones, the first filed on March 3, 2016 and currently being litigated by the Requesters in *American Civil Liberties Union v. Central Intelligence Agency*, No. 1:16-CV-1256 (D.D.C. filed June 21, 2016), and the second filed on May 9, 2017.

3

## I. Background

Millions of current and former government employees are prohibited from publishing anything that discusses their government service without first submitting their publications to "prepublication review."[1] The government's prepublication-review procedures have become dysfunctional and politicized, resulting in escalating public and congressional concern.[2] The dysfunction and politicization of the prepublication-review procedures raises serious First Amendment concerns.[3]

On March 3, 2016, the ACLU sought the release of records relating to the prepublication-review procedures of 19 government agencies and agency components.[4] That request is now the subject of litigation by the Requesters.

On May 9, 2017, the Requesters sought the release of records pertaining to prepublication review of writings by certain former government officials.[5]

---

[1] *See* Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process Is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTgg1j; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/pathdependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417 (2015).

[2] *See, e.g.*, Michael V. Hayden, Playing to the Edge: American Intelligence in the Age of Terror 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared regardless of the content. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

[3] *See, e.g.*, Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done?*, Just Security, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional, overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

[4] A copy of the request may be found at https://perma.cc/48JC-FW9H.

[5] A copy of the request may be found at https://perma.cc/WBK4-LM3M.

Records disclosed in response to these requests raise new questions about how the prepublication-review procedures are administered in practice and the extent to which those procedures have been the subject of internal investigation or proposed reform. Accordingly, the Requesters now seek additional records.

## II. Records requested

In relation to each agency, the Requesters seek the release of the following records:

1. all non-disclosure agreements and other agreements, including templates or standard forms of such agreements, imposing prepublication-review obligations on agency and/or former agency employees;

2. all documents relating to administrative appeals filed from prepublication-review determinations, including but not limited to:

    a. administrative appeals;

    b. any correspondence or back-and-forth between an agency and an individual who filed an administrative appeal; and

    c. final decisions with respect to administrative appeals;

3. all documents relating to any form of sanction imposed, or considered for imposition, on agency and/or former agency employees for failure to comply with their prepublication-review obligations.

In relation to the Central Intelligence Agency ("CIA") and the CIA's Office of Inspector General ("CIA OIG"), the Requesters also seek the release of the following:

4. all documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including any final report.[6]

In relation to the Department of Homeland Security ("DHS"), the Requesters also seek the release of the following:

---

[6] *See, e.g.*, Greg Miller and Julia Tate, *CIA probes publication review board over allegations of selective censorship*, Wash. Post, May 31, 2012, http://wapo.st/2iLpUuP.

5

5. all documents relating to consideration of proposed "Directive 110-03, Review of Official DHS Information for Public Release" and "Instruction 110-03-001, Review of External Publications," including the non-concurrences of the Office of Public Affairs and Domestic Nuclear Detection Office;[7] and

6. all directives, instructions, policies, or guidance relating to prepublication review approved after the cut-off date used by DHS in relation to the FOIA request filed by the Requesters on March 3, 2016.

In relation to the Office of the Director of National Intelligence ("ODNI"), the Requesters also seek the release of the following:

7. all IC-wide policies regarding prepublication review issued by the Director of National Intelligence;[8] and

8. all reports, memoranda, and correspondence relating to the adequacy of IC information technology efforts to improve and expedite prepublication review.[9]

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

---

[7] *See* DHS memorandum titled "Directive 110-03, Review of Official DHS Information for Public Release & Instruction 110-03-001, Review of External Publications," dated July 14, 2014, and produced in response to the FOIA request filed by the Requesters on May 9, 2017 (recommending approval of the Directive and Instruction to "provide uniform policy guidance for Department Components when given the opportunity to review materials written by DHS employees for external publication not necessarily related to their official duties" and noting non-concurrences from the Office of Public Affairs and Domestic Nuclear Detection Office). That memorandum is attached hereto as **Exhibit A**.

[8] *See* H.R. Rep. No. 114–573, at 7 (2016) (directing that, no later than 180 days after the enactment of the Intelligence Authorization Act For Fiscal Year 2017, the Director of National Intelligence "issue an IC-wide policy regarding pre-publication review").

[9] *Id.* at 8 (directing that, no later than 180 days after the enactment of the Intelligence Authorization Act For Fiscal Year 2017, the Director of National Intelligence "provide to the congressional intelligence committees a report on the adequacy of IC information technology efforts to improve and expedite pre-publication review processes, and the resources needed to ensure that IC elements can meet this direction").

We ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B).

### III. Application for Expedited Processing

The Requesters seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the documents sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*A. The Requesters are primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Requesters are "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute was established to perform. *See, e.g.*, among others, *ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The ACLU is similarly "primarily engaged in disseminating information" within the meaning of FOIA. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See id.*[10]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is

---

[10] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

disseminated to over 620,000 people. The ACLU also publishes regular updates and alerts via email to over 2.6 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.2 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[11] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[12]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

---

[11] *See, e.g.*, Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit* (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, *Justice Department White Paper Details Rationale for Targeted Killing of Americans* (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement* (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[12] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[13] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

---

[13] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

The ACLU website includes many features on information obtained through the FOIA.[14] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[15]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel

---

[14] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[15] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

memos relating to interrogation, detention, rendition, and surveillance.[16] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[17]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[18]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[19]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[20]

The Requesters plan to analyze, publish, and disseminate to the public the information gathered through this request at no cost.

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The documents sought are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).

While agencies' prepublication regulations are in part public, the implementation of those regulations is almost entirely invisible outside the government. The records requested here are urgently needed to allow the public to better understand the way the regulations are implemented, and to enable it to evaluate whether agencies' prepublication-review processes are effective and fair. The records would also allow the public to better understand the lawfulness of agencies' activity on a matter that closely relates to fundamental rights but which presents a significant opportunity for the abuse of discretion, impacting public trust in government. The

---

[16] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[17] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[18] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[19] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/ other/statistics-nsls-produced-dod.

[20] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

11

effectiveness, fairness, and lawfulness of the prepublication-review process is a matter of significant public interest and ongoing media attention.[21]

For these reasons, the Requesters are entitled to expedited processing.

### IV. Application for Waiver or Limitation of Fees

The Requesters seek a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Requesters' commercial interests. The requesters will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms—in scholarly publications, in long-form reports, and in short-form essays.

The Requesters also request a waiver of search and review fees on the grounds that they are "representative[s] of the news media" within the

---

[21] *See, e.g.*, Thomas Reed Willemain, *A Personal Tale of Prepublication Review*, Lawfare, Jan. 10, 2017, https://www.lawfareblog.com/personal-tale-prepublication-review; Nada Bakos & John Nixon, *The CIA Is Delaying Our Books' Publication, and That Hurts Our Democracy*, Wash. Post, Dec. 22, 2016, https://www.washingtonpost.com/opinions/the-cia-is-delaying-our-books-publication-and-that-hurts-our-democracy/2016/12/22/068f115c-ba8c-11e6-94ac-3d324840106c_story.html?utm_term=.6c1309f097c3; David Kris, *The CIA's New Guidelines Governing Publicly Available Information*, Lawfare, Mar. 21, 2017, https://www.lawfareblog.com/cias-new-guidelines-governing-publicly-available-information; *see also supra* notes 2 and 3.

meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Requesters each meet the statutory definition of a "representative of the news media" because each "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012); *ACLU of Wash. V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Requesters, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Requesters are entitled to a fee waiver.

\* \* \*

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email. Please direct any correspondence and responses to this request to Ramya Krishnan.

I certify that the above is true and correct to the best of my knowledge.

Sincerely,

/s/ Ramya Krishnan
Ramya Krishnan
Alex Abdo
Knight First Amendment Institute at
  Columbia University
1140 Amsterdam Avenue

13

        206 Kent Hall
        New York, NY 10027
        ramya.krishnan@knightcolumbia.org
        (212) 854-1620

        Brett Max Kaufman
        Center for Democracy
        American Civil Liberties Union
         Foundation
        125 Broad Street, 17th Floor
        New York, NY 10004
        bkaufman@aclu.org
        (212) 549-2500

Enc:    Ex. A (DHS memorandum dated July 14, 2014)

# EXHIBIT A

U.S. Department of Homeland Security
Washington, DC 20528



Homeland Security

DATE: July 14, 2014

MEMORANDUM FOR: Michael Russell
Senior Counselor
DHS Adjudicator

FROM: Brendan LaCivita
Deputy Director, Strategic Communications
DHS Office of Public Affairs

SUBJECT: Directive 110-03, Review of Official DHS Information for Public Release & Instruction 110-03-001, Review of External Publications

**Summary**: This Directive and Instruction document provide uniform policy guidance for Department Components when given the opportunity to review materials written by DHS employees for external publication not necessarily related to their official duties.

**Need**: The Department does not have uniform policy guidance for the review of materials written by DHS employees for external publication not necessarily related to their official duties. Most large federal departments, including the Department of State and the Department of Defense, have a uniform system in place for such employee-written materials. In fact, you will note in the draft Directive several authorities, including executive orders, delegated to federal departments that support review of such materials. It is important to note here the sole need for such review is to prevent the unintentional release of sensitive, FOUO, or classified information by DHS employees when writing materials meant for external publication not necessarily related to their official duties.

**Explanation of Delegated Authorities**: The DHS Office of Public Affairs has been delegated by the Secretary to oversee review of external communications/materials through both Delegation Authority 2001, and Title 6, USC, "Secretary; functions," §112 (b)(1).

**Departmental Coordination:** This Directive was cleared by all Components except the Office of the Inspector General (OIG), which claims an overall exemption from DHS Management Directives because they challenge OIG's independent authority status, and the Domestic Nuclear Detection Office (DNDO), which will not change its non-concurrence until its concerns have

been satisfactorily addressed by the Office of the General Counsel. Specifically, DNDO's concerns are:

- The scope of the types of publications needing OPA review is too broad to be implementable or enforceable. **OPA non-concurred and explained the MD clearly states what is/is not covered.**
- OPA should not have oversight over information exchanges between U.S. Government agencies or state, local, tribal, and territorial governments. **OPA non-concurred and referenced section II D, 3 which clearly states information to state, local, tribal, and territorial governments is exempt.**
- DNDO interprets the MD to cover conversations it has with industry partners concerning its programs and that OPA review of such information exchange is inappropriate and unnecessary. **OPA non-concurred and referenced section II D, 3 which clearly states information to industry partners is exempt.**
- The MD raises a constitutional issue in that OPA believes it is empowered to review unofficial information release to the public by employees or former employees as if OPA has lifetime control over individuals' speaking or writing. **OPA non-concurred and deferred action to OGC.**

**Recommendation:** While OPA was able to reach concurrence with DNDO on several other concerns raised we recommend you approve this Directive, either with or without OIG and DNDO concurrence, because currently there is no uniform Department review process in place for review of employee-written materials not necessarily related to their official duties. We also encourage approval as the policy supports a critical agency function in the review of employee-written materials, and because it supports several authorities, including executive orders, which grant federal agencies authority to review such materials.