# ATTACHMENT C



March 27, 2018

**via online submission**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843
https://efoia.fbi.gov

**via email**

FOIA/PA Mail Referral Unit
Department of Justice
LOC Building, Rm 115
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

Arnetta Mallory
FOIA Initiatives Coordinator
National Security Division
Department of Justice
950 Pennsylvania Avenue, N.W., Rm 6150
Washington, D.C. 20530-0001
nsdfoia@usdoj.gov

    **Re: Freedom of Information Act Request
       Expedited Processing Requested**

To whom it may concern,

 The Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation (the "Requesters") submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records pertaining to agency prepublication review of James Comey's memoir, *A Higher Loyalty: Truth, Lies, and Leadership*.

## I. Background

Millions of current and former government employees are prohibited from publishing manuscripts that discuss their government service without first submitting the manuscripts for "pre-publication review." In recent years, the prepublication-review system has become dysfunctional and politicized, causing public and congressional concern,[1] and raising serious First Amendment questions.[2]

The Requesters have filed three previous FOIA requests for records relating to various aspects of the prepublication-review process, including two requests for records relating to the prepublication-review procedures of various agencies,[3] and one request for records pertaining to the review of writings by certain former government officials.[4]

The Requesters now seek records relating to the prepublication review of the memoir of James Comey, the former Director of the Federal Bureau of Investigation. In August of last year, the media reported that Mr. Comey

---

[1] *See* H.R. Rep. No. 114–573, at 7 (2016); Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process Is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTgg1j; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/pathdependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417(2015); *See, e.g.*, Michael V. Hayden, Playing to the Edge: American Intelligence in the Age of Terror 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared regardless of the content. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

[2] *See, e.g.*, Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done?*, JustSecurity, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional, overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

[3] A copy of the requests may be found at https://perma.cc/48JC-FW9H and https://perma.cc/4QDA-87GN.

[4] A copy of the request may be found at https://perma.cc/WBK4-LM3M.

would publish a memoir about his years in government.[5] Last month, it was announced that the memoir would be published in April, under the title *A Higher Loyalty*.[6]

## II. Records requested

The Requesters seek the following documents with respect to James Comey:

1. all correspondence between the government and Mr. Comey or his representatives relating to the prepublication review *or* publication of Mr. Comey's memoir, *A Higher Loyalty*;

2. all inter- and intra-agency correspondence relating to the prepublication review or publication of *A Higher Loyalty*;

3. all documents reflecting decisions—interim, final, and after appeal—related to the prepublication review of *A Higher Loyalty*.

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B).

## III. Application for Expedited Processing

The Requesters seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the documents sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

---

[5] Alexandra Alter, *James Comey, Former F.B.I. Director, to Publish a Book Next Spring*, N.Y. Times, Aug. 2, 2017, https://www.nytimes.com/2017/08/02/books/james-comey-book.html.

[6] *Publisher Moves Up Release of James Comey Memoir to April 17*, AP, Feb. 7, 2018, http://www.apnewsarchive.com/2018/Noting-that-the-FBI-is-under-intense-scrutiny-James-Comey-s-publisher-is-moving-up-the-release-date-of-his-memoir-A-Higher-Loyalty-/id-bab4442efded4ba1a6549e2a674c6f83.

### *A. The Requesters are primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Requesters are "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute was established to perform. *See, e.g.*, among others, *ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The ACLU is similarly "primarily engaged in disseminating information" within the meaning of FOIA. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See id.*[7]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 920,000 people. The ACLU also publishes regular updates and alerts via email to over 3.1 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.83 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking

---

[7] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

4

news,[8] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[9]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[10] The ACLU also regularly publishes books, "know your rights"

---

[8] *See, e.g.*, Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit* (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, *Justice Department White Paper Details Rationale for Targeted Killing of Americans* (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement* (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[9] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[10] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-

materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[11] For example, the ACLU's "Predator Drones FOIA"

---

obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[11] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI:*

webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[12]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[13] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[14]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[15]; a chart of original statistics about the Defense

---

*Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[12] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[13] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[14] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[15] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU,

Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[16]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[17]

The Requesters plan to analyze, publish, and disseminate to the public the information gathered through this request at no cost.

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The documents sought are urgently needed to inform the public about actual or alleged government activity. See 5 U.S.C. § 552(a)(6)(E)(v)(II).

There is an urgent need for the public to understand the prepublication review of James Comey's memoir given the high-profile nature of the publication and the apparent speed with which it underwent agency review. While agencies' prepublication regulations are in part public, the implementation of those regulations is almost entirely invisible outside the government. The records requested here would allow the public to understand more fully the way the regulations are implemented, especially as to high-profile publications. Disclosure would allow the public to evaluate whether agencies' prepublication-review processes are effective and fair.

The records would also allow the public to better understand the lawfulness of agencies' activity on a matter that closely relates to fundamental rights and leaves room for abuse of discretion, impacting public trust in government. The effectiveness, fairness, and lawfulness of the prepublication-review process is a matter of significant public interest and ongoing media attention.[18]

---

https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[16] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/ other/statistics-nsls-produced-dod.

[17] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[18] *See, e.g.*, Thomas Reed Willemain, *A Personal Tale of Prepublication Review*, Lawfare, Jan. 10, 2017, https://www.lawfareblog.com/personal-tale-prepublication-review; Nada Bakos & John Nixon, *The CIA Is Delaying Our Books' Publication, and That Hurts Our Democracy*, Wash. Post, Dec. 22, 2016, https://www.washingtonpost.com/opinions/the-cia-is-delaying-our-books-publication-and-that-hurts-our-democracy/2016/12/22/068f115c-ba8c-11e6-94ac-3d324840106c_story.html?utm_term=.6c1309f097c3; David Kris, *The CIA's New Guidelines Governing Publicly Available Information*, Lawfare, Mar. 21, 2017,

For these reasons, the Requesters are entitled to expedited processing.

### IV. Application for Waiver or Limitation of Fees

The Requesters seek a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Requesters' commercial interests. The requesters will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. The Institute has inaugurated a research program that brings together academics and practitioners of different disciplines to study contemporary First Amendment issues and to offer informed, non-partisan commentary and solutions. It publishes that commentary in many forms—in scholarly publications, in long-form reports, and in short-form essays.

The Requesters also request a waiver of search and review fees on the grounds that they are "representative[s] of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Requesters each meet the statutory definition of a "representative of the news media" because each "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices

---

https://www.lawfareblog.com/cias-new-guidelines-governing-publicly-available-information; *see also supra* notes 2 and 3.

and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012); *ACLU of Wash. V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the requesters, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53 – 54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Requesters are entitled to a fee waiver.

\*    \*    \*

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email. Please direct any correspondence and responses to this request to the Knight First Amendment Institute.

I certify that the above is true and correct to the best of my knowledge.

Sincerely,

Greg Margolis
Ramya Krishnan
Alex Abdo
Knight First Amendment Institute at
   Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
alex.abdo@knightcolumbia.org
(646) 745-8502

Brett Max Kaufman
Center for Democracy
American Civil Liberties Union
   Foundation
125 Broad Street, 17th Floor
New York, NY 10004
bkaufman@aclu.org
(212) 549-2603