IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, *et al.* ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 18-1129 (EGS) |
| v. ) ) | |
| DEPARTMENT OF DEFENSE, *et al.* ) ) | |
| Defendants. ) | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PROCESSING SCHEDULE

## INTRODUCTION

This Freedom of Information Act ("FOIA") suit involves Plaintiffs' three (3) multi-part FOIA requests for records that relate to the prebublication review processes and procedures of 20 Executive Branch agencies, including written communications with current and former federal government employees, many of which contain information that is personal, confidential, proprietary, sensitive, and/or classified and thus protected from disclosure under FOIA. In the instant motion, Plaintiffs seek an order that would require the Defendants, the Central Intelligence Agency ("CIA") and Department of Homeland Security ("DHS"), to complete processing and produce all responsive records by July 16, 2019, and June 25, 2019, respectively. *See* Pls.' Mot. for Processing Schedule at 1. The Court should deny Plaintiffs' motion.

As an initial matter, Plaintiffs' request for an order compelling DHS to complete processing and production of responsive records by June 25, 2019, is moot. Since the filing of Plaintiffs' motion, DHS has completed processing of responsive records and produced all non-exempt, responsive records (or the portions thereof) in a final response letter dated June

3, 2019, which the agency sent to Plaintiffs via e-mail on the same day. Accordingly, because DHS has completed processing Plaintiffs' FOIA request, the Court should deny Plaintiffs' motion as moot with respect to Defendant DHS.

Plaintiffs' motion with respect to Defendant CIA should also be denied. In the intervening months since the CIA acknowleged receipt of the prepublication review FOIA requests at issue in this case, the agency has: (1) searched for and identified approximately 1,870 responsive records—the vast majority of which were identified by a painstaking and time-intensive manual review of the agency's Pre-Publication Review Board's hard copy files; (2) issued two interim responses to Plaintiffs (which included the production of roughly 124 records); and (3) proposed a processing and production schedule for the remaining 1,746 records that attempts to balance Plaintiffs' desire to obtain responsive records as expeditiously as possible with the CIA's existing workload obligations and resource constraints. *See* Amended Joint Status Report ¶ G, ECF No. 33.

Plaintiffs largely ignore Defendant CIA's good faith effort to process and produce the remaining responsive records as expeditiously as practicable, insisting instead that Defendant CIA should be required to complete processing and production of the remaining records in a little over a month. The only grounds Plaintiffs proffer in support of their expedited timeframe are the amount of time that has passed since they submitted Request 2 (19 months), and it gives the CIA two months from the date of the filing of Plaintiffs' motion to complete production. But Plaintiffs fail to consider the substantial amount of time that it has taken the CIA to identify the over 1,800 records that are responsive to Request 1 and Request 2, the time required to complete production, and the CIA's competing obligations and demands on its FOIA staff.

Nor is Plaintiffs' request that the CIA complete processing and production of the remaining approximately 1,746 responsive records in two months a reasonable one.  Plaintiffs' two-month processing schedule risks the inadvertent disclosure of proprietary, confidential, and/or classified information that is otherwise exempt from production under FOIA.   The risk of inadvertent disclosure of proprietary, confidential, and/or classified information is particularly heightened given the nature of the records that are responsive to Plaintiffs' FOIA requests.  Plaintiffs' two-month processing and production deadline also disadvantages other requestors by prioritizing Plaintiffs' FOIA requests by unfairly leap-frogging them to the front of the CIA's processing queue.

Accordingly, for the reasons set forth in detail below and in the accompanying Shiner Declaration, the Court should deny Plaintiffs' motion for an expedited processing schedule, or in the alternative for a status conference.

## **BACKGROUND**

This lawsuit involves three FOIA requests sent to no less than 20 Executive Branch agencies, seeking records about the agencies' pre-publication review processes—the policies and procedures governing the review of written materials drafted or prepared by current or former federal government employees, which discuss or reference their federal government service, prior to their publication.  *See* Compl. ¶¶ 1, 14-123.  The CIA received two of the three FOIA requests (FOIA Request 1 and FOIA Request 2).

FOIA Request 1 was submitted to the CIA on May 9, 2017.  FOIA Request 1 requested records related to the agency's prepublication review of material published by 22 indentified individuals.  More specifically, it asked for all correspondence between the government and any of the individuals, and any inter- and intra-agency correspondence, related to the prepublication review or publication of material intended to be published in their

personal capacities, and all records reflecting decisions related to the pre-publication review of material published by the 22 identified individuals. *See id.* ¶¶ 14-17. The CIA acknowledged receipt of FOIA Request 1 on May 15, 2017, *see* Answer ¶ 27, ECF No. 22, and on October 31, 2017, sought to narrow the scope of Request 1 to records "related to" the publications of the individuals named in Request 1 . *See* Shiner Decl. ¶¶ 14-17; *see also* Exhibit B to Shiner Decl. To date, Plaintiffs have not responded to the CIA's October 31, 2017 letter. *See* Shiner Decl. ¶ 9.

On December 13, 2017, Plaintiffs submitted FOIA Request 2 to the CIA. *See* Compl. ¶¶ 14, 43; *see also* Answer ¶ 58. FOIA Request 2 sought wide swaths of additional records related to the agency's prepublication review processes -- specifically, all non-disclosure and other agreements imposing prepublication review requirements on all agency and former agency employees; all documents relating to administrative appeals filed from prepublication review determinations; and all documents relating to sanctions on agency and former agency employees for failing to comply with prepublication review requirements. *See* Compl. ¶ 44. In addition to these specific requests, FOIA Request 2 submitted to the CIA contains an additional request, seeking records related to "any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, incuding any final report." Compl. ¶¶ 44-45. The CIA acknowledged receipt of Plaintiffs' FOIA Request 2 on December 20, 2017, *see* Answer ¶ 58, and on January 12, 2018, sought to narrow the scope of this request to responsive records within the past year. *See* Answer ¶ 59; *see also* Shiner Decl. ¶ 11; Exhibit G to Shiner Decl.

By letter dated January 24, 2018, Plaintiffs agreed to narrow the parts of Request 2 related to administrative appeals and sanctions to responsive records within "the last year," but reserved the right "to ask that the agency process responsive records for additional years

4

. . . if there are few responsive records from the last year or if the records from the last year do not appear representative." *See* Exhibit H to Shiner Decl; *see also* Answer ¶ 60. With respect to the part of Request 2 that sought agreements, Plaintiffs agreed to limit that part to "'[a]ll non-disclosure agreement forms/templates' that are currently in use,'" but denied the CIA's request to limit the request to responsive records within the past year. *See* Exhibit H to Shiner Decl. Plaintiffs' January 24, 2018 letter did not address the CIA's request to narrow the scope of the request for records related to an Office of Inspector General investigation concerning the agency's pre-publication review practices. *See* Shiner Decl. ¶ 12.

On February 2, 2018, the CIA sent Plaintiffs a third letter attempting to determine whether Plaintiffs agreed with the agency's modification regarding the scope of the OIG request. *See id.*; *see also* Answer ¶ 61. Plaintiffs responded via letter dated February 16, 2018 letter. *See* Shiner Decl. ¶ 12; *see also* Answer ¶ 62. In their February 16, 2018 letter, Plaintiffs rejected the agency's request to limit the temporal scope of records responsive to the OIG request and offered a counter proposal, which narrowed the request by seeking (1) "[a]ny document, including final report, related to the investigation begun by the CIA or CIA OIG in or about May 2012 into the composition and practices of the Prepublication Review Board ('new item 4(a)')" and (2) "[a]n document, including final report, related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board within the last five years ('new item 4(b)')." Exhibit J to Shiner Decl.

On March 1, 2018, and on May 11, 2018, the CIA wrote to Plaintiffs, memorialzing the agency's understanding of the parties' agreed-upon modifications to Request 2. *See* Shiner Decl. ¶ 13. To date, Plaintiffs have not responded to either letter. *See id.* However, on May 11, 2018, the same day that the CIA sent its second letter to Plaintiffs, Plaintiffs filed this

action, alleging, *inter alia*, that the CIA had violated FOIA with respect to Request 1 and Request 2.  *See id.*; *see also generally* Compl.

In the intervening nineteen months since Plaintiffs submitted Request 1 and Request 2, and not withstanding having a narrowing agreement in place for only certain subparts of Plaintiffs' requests, the CIA has conducted a search for responsive records and identified approximately 1,870 records that are potentially responsive to Request 1 and Request 2.  *See* Shiner Decl. ¶¶ 16-28.  By letters dated March 6, 2019, and April 30, 2019, the CIA has issued two interim responses to Request 1 and Request 2, which included the production of approximately 124 records. *See* Pls.' Mot. for a Processing Schedule at 7; *see also* Shiner Decl. ¶¶ 16-28.   For the remaining records (*i.e.*, the roughly 1,746 records that remain to be processed and produced), the CIA has proposed (1) to produce by June 28, 2019, one-third of all responsive, non-exempt records; (2) to produce by September 30, 2019, half of all responsive non-exempt records; and (3) to complete production of all responsive, non-exempt records by December 19, 2019.  *See id.*  ¶ 28.

Plaintiffs rejected this schedule and filed the instant motion asking that the CIA complete production of all responsive, non-exempt records by July 16, 2019, or in the alternative, for a status conference.  The sole grounds Plaintiffs provide for why this timeframe is reasonable are that it is 19 months after they submitted Request 2, and that it gives the CIA two months from the date of the filing of Plaintiffs' motion to complete production.  *See* Pls.' Mot. for a Processing Schedule at 10.

## ARGUMENT

As set forth in detail in the attached Shiner Declaration, the CIA searched for and identified roughly 1,870 records that are responsive to Request 1 and Request 2, issued two (of five) interim responses (with which Defendant CIA produced approximately 124 records),

6

and proposed a processing and production schedule for the remaining 1,746 records that balances Plaintiffs' desire to obtain records expeditiously with the significant amount of work required to process these prepublication review records, the agency's burgeoning FOIA workload, and the agency's responsibility to protect sensitive information from inadvertent disclosure.

By focusing on the number of records they have received through the CIA's two productions and the time elapsed since the requests were submitted, Plaintiffs pay short shrift to all of the work that the CIA has put into processing Plaintiffs' extremely broad requests and the work yet to be done. The CIA had to manually review hard copy files of the Prepublication Review Board ("PRB") to search for records responsive to Plaintiffs' requests. *See* Shiner Decl. ¶¶ 17-18. This is in direct contrast to the typical FOIA matter for which Defendant CIA is usually able to conduct a search for responsive records by conducting key word searches of electronic files for responsive records. *See id.*

In this case, Plaintiffs' FOIA requests necessitated the agency's manual review of hard copy files because the "PRB hard copy file is the most comprehensive and complete compilation of all correspondence and other relevant documents related to the prepublication review process." *Id.* ¶ 17. The CIA's search identified over 1,800 potentially responsive records, which then had to be scanned into the CIA's FOIA record review system. *Id.* ¶ 19, 24. This "took a significant amount of time, as box after box had to be sorted and scanned." *Id.* ¶ 24. In addition, "extensive duplication exists within the set of potentially responsive records." *Id.* ¶ 25. It required additional time to make sure that duplicate documents were processed in a consistent manner. *Id.*

Plaintiffs also ignore the amount of time that it will take the agency to determine whether there is any information in the approximately 1,746 remaining records that is

protected against disclosure under FOIA. Once documents are identified as responsive, a time-consuming review of those documents has to be conducted to determine whether they are subject to any of FOIA's exemptions from disclosure. *See id.* ¶¶ 21-23. Here, the normal review process, which includes consulting with Subject Matter Experts to determine the propriety of redactions, is made particularly challenging and time-consuming as a result of "the nature and potential sensitivities of the documentation requested." *Id.* To that point, in the context of prepublication review material, "much of the internal correspondence contains classified information that must be redacted or withheld in full." *Id.* ¶ 22. As a result, in order to process properly many of the records responsive to Request 1 and Request 2, Subject Matter Experts will work with CIA's FOIA experts to conduct "a line-by-line review of [the majority of the roughly 1,746 remaining records identified in the PRB's hard copy file] . . . in order to determine the segregability of the information contained within these documents." *Id.* And once these individuals have made their segregability and exemption determinations, "senior FOIA officials and the Office of General Counsel" need "additional time" to review the potential releases and coordinate with other agencies, the latter of which is a process that the CIA does not have complete control over. *Id.* ¶¶ 23, 28.

Nor is the processing of Plaintiffs' FOIA requests the only work with which the CIA's FOIA office is tasked, obviously. Over the last few years, "the number of FOIA requests sent to [the] CIA has consistently increased." *Id.* ¶ 26. For example, "in 2017, there were 2,572 FOIA requests submitted to CIA, but this number increased to 2,726 in 2018." *Id.* The CIA has also experienced an unanticipated increase in its FOIA workload in recent months, including unforeseen competing deadlines. *See id.* The fact that a senior FOIA expert has left the agency has only further inhibited the CIA's ability to manage its burgeoning FOIA workload. *See id.*

In light of all these factors, the CIA's proposed schedule, pursuant to which it will complete production of the roughly 1,746 remaining responsive, non-exempt records in 6 months, is reasonable. It ensures that the CIA will be able to comply with existing deadlines in other FOIA matters, does not disadvantage other requestors whose FOIA requests have also been pending in the agency's queue, and protects sensitive information from inadvertent disclosure. *See, e.g., Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015) (requiring the defendant agency to process and produce records that include sensitive national security material on an abbreviated deadline "raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA").

By contrast, Plaintiffs' proposal does not take any of these important (and time-intensive) considerations into account and is not reasonable. Instead, if adopted, Plaintiffs' proposal, which would require the CIA to process the remaining 1,746 records in a little over a month from now, would: (1) risk disclosing classified and other sensitive information, (2) unduly burden the agency's already stretched FOIA personnel, (3) compromise CIA's ability to meet existing deadlines in other FOIA cases, and (4) disadvantage other FOIA requestors. The Court should not require such a result. *See Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (internal citation omitted) (explaining that in this Circuit, there are "two long-standing principles that apply to FOIA cases," one of which is that courts consider "the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion and adopt the CIA's proposed schedule. Defendants do not believe that a

status conference is necessary and for that reason object to Plaintiffs' alternative request for one.

Dated: June 6, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

<u>/s/ Tamra T. Moore</u>
TAMRA T. MOORE
District of Columbia Bar No. 488392
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, Room 5375
Washington, DC 20001
Tel: (202) 305-8628
Fax: (202) 305-8517
E-mail: tamra.moore@usdoj.gov

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served to all counsel of record via the Court's CM/ECF system on this 6th day of June, 2018.

*/s/ Tamra T. Moore*
TAMRA T. MOORE