## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Knight First Amendment Institute at Columbia, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-cv-1129 |
| Central Intelligence Agency, *et al.* | ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF ANTOINETTE B. SHINER
## INFORMATION REVIEW OFFICER
## FOR THE LITIGATION INFORMATION REVIEW OFFICE
## CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

### I.  INTRODUCTION

1.    I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency"). I assumed this position in January 2016.

2.    Prior to becoming the IRO for LIRO, I served as the IRO for the Directorate of Support for over sixteen months.  In that capacity, I was responsible for making classification and release determinations for information originating within the Directorate of Support.  Prior to serving in the Directorate of Support, I was

1

the Deputy IRO for the Director's Area of the CIA ("DIR Area") for over three years.  In that role, I was responsible for making classification and release determinations for information originating within the DIR Area, which included, among other offices, the Office of the Director of the CIA, the Office of Congressional Affairs, the Office of Public Affairs, and the Office of General Counsel.  I have held other administrative and professional positions within the CIA since 1986, and have worked in the review and release field since 2000.

3.    I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010).  This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

4.    Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a.

5.    I also have been designated as a Records Validation
Officer ("RVO").  As an RVO, I am authorized to testify or execute
affidavits on behalf of the Agency regarding CIA records and
records searches for litigation matters involving CIA information.

6.    Through the exercise of my official duties, I have
become familiar with this civil action and the underlying FOIA
requests. I make the following statements based upon my personal
knowledge and information made available to me in my official
capacity. I am submitting this declaration in support of the
United States Department of Justice's Response in Opposition to
Plaintiffs' Motion for a Processing Schedule or, in the
Alternative, A Status Conference.

7.    The purpose of this declaration is to explain and
justify the CIA's actions in responding to Plaintiffs' FOIA
requests and explain why adopting Plaintiffs' proposed production
scheduled would be unreasonably burdensome, impracticable, and not
feasible to adhere to without compromising CIA's ability to meet
existing deadlines in other FOIA cases and without directly
disadvantaging other FOIA requesters.  For the Court's
convenience, I have divided the remainder of this declaration into
six sections.  Part II provides the Court with background details
related to Plaintiffs' FOIA requests; Part III explains steps
taken by CIA to process Plaintiffs' requests; Part IV explains the
steps that CIA will take to review and process documents that are

responsive to Plaintiffs' requests; and Part V provides the Court
with CIA's estimated timeline for completion of processing of the
request.

## II.   PLAINTIFFS' FOIA REQUESTS

### A. FOIA Request 1

8.    Via letter dated 9 May 2017, Plaintiffs submitted a FOIA
Request ("Request 1"), which seeks records pertaining to the
prepublication review of writings submitted by twenty-two former
national security officials, including correspondence between CIA
and those officials; inter- and intra-agency correspondence
relating to the prepublication review of material submitted by
those officials; and all records reflecting decisions--interim,
final, and post-appeal--related to the prepublication review of
material published by those officials. A copy of Request 1 is
attached as Exhibit A.

9.    By letter dated 15 May 2017, the CIA acknowledged
receipt of Request 1. A copy of this letter is attached as Exhibit
B. By letter dated 22 May 2017, Plaintiffs responded to CIA's
letter. A copy of Plaintiffs' letter is attached as Exhibit C.   By
letter dated 31 October 2017, the CIA requested clarification
regarding the broad scope of Request 1.   A copy of CIA's 31
October 2017 letter to Plaintiffs is attached as Exhibit D. CIA's
records reflect no response from Plaintiffs to CIA's 31 October
2017 letter.

**B. FOIA Request 2**

10.  Via letter dated 13 December 2017, Plaintiffs submitted their second FOIA request ("Request 2") to CIA. This request seeks several categories of records related to CIA's prepublication review process, including non-disclosure agreements, documents relating to administrative appeals and sanctions, as well as documents pertaining to any investigation by CIA into CIA's prepublication review practices. A copy of Request 2 is attached as Exhibit E.

11.  By letter dated 20 December 2017, CIA acknowledged receipt of Request 2.  A copy of this letter to Plaintiffs is attached as Exhibit F. By letter dated 12 January 2018, CIA sought to modify Request 2, given the very broad scope of the request. A copy of this letter to Plaintiffs is attached as Exhibit G. By letter dated 24 January 2018, Plaintiffs agreed in part to CIA's requests to narrow the scope with respect to items 1-3 listed in Request 2. A copy of this letter is attached as Exhibit H.

12.  By letter dated 2 February 2018, CIA requested clarification regarding item 4 in Request 2, which requests records pertaining to an OIG investigation related to CIA's prepublication review practices. A copy of CIA's 2 February 2018 letter to Plaintiffs is attached as Exhibit I. Plaintiffs responded by letter dated 16 February 2018 and rejected CIA's request to limit item 4 and instead made a counter-proposal as to

how to limit item 4. A copy of Plaintiffs' 16 February 2018 letter is attached as <u>Exhibit J.</u>

13.   CIA sent two letters to Plaintiffs summarizing the proposed modifications to Request 2—one dated 1 March 2018 and one dated 11 May 2018. Copies of both these letters are attached as <u>Exhibits K and L</u> respectively. CIA's records reflect no response from Plaintiffs to either of those letters.

14.   On 11 May 2018, Plaintiffs filed a Complaint with this Court related to Requests 1 and 2. Over the past months, CIA has been working to provide Plaintiffs with documents responsive to Plaintiffs' requests. CIA already made two rolling productions in this matter, one on 6 March 2019, and another on 30 April 2019.

15.   As explained in more detail below, searching for and locating documents responsive to Plaintiffs' requests required significant time and resources. Due to the large volume and type of documents located in response to Plaintiffs' requests, CIA estimates it will need an additional 6 months to review the responsive documents and prepare any nonexempt documents for release to Plaintiffs.

### III. CIA's SEARCH FOR RESPONSIVE RECORDS

16.   As noted above, Plaintiffs' FOIA request seek records related to the CIA's prepublication review process. Because the CIA's records are decentralized and compartmented due to the unique security and counterintelligence risks that the CIA faces,

each component must devise its own search strategy, which includes
identifying which of its records systems to search as well as what
search tools, indices, and terms to employ. The records for this
matter are stored both within the Directorate of Digital
Innovation ("DDI") and also within other components, such as the
Office of Inspector General's Office.

17.   While many of the responsive documents include emails
and other electronic documents, the central repository for CIA's
Prepublication Review Board ("PRB") records is the hard copy file,
which is maintained for each PRB submission. If an email is
exchanged with an author regarding his/her publication, or if the
PRB consults with a Subject Matter Expert ("SME") regarding a
specific manuscript, then that correspondence would be printed off
and preserved in hard copy PRB file for that PRB submission.
During PRB's review of a draft manuscript, several emails may be
exchanged with multiple components and other federal agencies. The
PRB hard copy file is the most comprehensive and complete
compilation of all correspondence and other relevant documents
related to the prepublication review process.

18.   As such, the relevant PRB documents searched and
reviewed here were primarily kept in hard copy. If the relevant
files were housed electronically, CIA would have been able to
conduct electronic key word searches to identify potentially
responsive documents. Instead, it was necessary to conduct a

painstaking manual review of the hard copy files in order to discern which documents were potentially responsive and should therefore be scanned into CIA's document processing program.

19.   As a result of the searches and review of these files, over 1800 potentially responsive documents were identified. Those documents were then manually scanned in a workspace where CIA reviewers could begin a more directed parsing of the documents to remove any non-responsive documents that were inadvertently included.  This requires reviewing all of the records uncovered in the search and performing at least a cursory examination of the contents to determine responsiveness to Plaintiffs' requests, which has been a time-consuming process.

20.   Moreover, once CIA identifies all of the potentially responsive documents, the Agency must then undertake an additional time-consuming process, namely an in-depth review of each record to determine whether it is in fact responsive to Plaintiffs' requests and whether it is subject to any of the exemptions under FOIA. This part of the process, and the challenges it poses to CIA, is explained in more detail below.

## IV. CIA'S REVIEW OF RESPONSIVE RECORDS

21.   Given the nature and potential sensitivities of the documentation requested, CIA's review and processing of potentially responsive documents is particularly challenging and time-consuming.

22.   CIA requires additional time in order to review documents to determine whether they: (1) are responsive to Plaintiffs' requests, (2) contain information exempt from disclosure, and if so, (3) to identify any reasonably segregable, nonexempt material. CIA will also likely need time to consult with SMEs and with other components of CIA in order to confirm that redactions are appropriate. When necessary, these SMEs, in concert with the CIA's FOIA experts, will conduct a line-by-line review of documents in order to determine the segregability of the information contained within these documents. This is especially important in the context of prepublication review material, as much of the internal correspondence as well as other documents contain classified information that must be redacted or withheld in full. Furthermore, communications between CIA personnel and the officials listed in Request 1 require a careful review, as these documents could contain personal and proprietary information, which must also be properly treated.

23.   Review by both senior FOIA officials and the Office of General Counsel as well as general preparation of the documents to be released also require additional time.

24.   CIA has encountered several additional processing issues particular to this matter while processing Plaintiffs' requests. First, as stated above, Requests 1 and 2 seek a significant number documents of hard copy files. This does not occur in most FOIA

matters, and this has inhibited CIA's ability to quickly transfer the records electronically into the FOIA record review system that CIA uses. Instead, transferring these documents took a significant amount of time, as box after box had to be sorted and scanned.

25.   Second, extensive duplication exists within the set of potentially responsive records. Because most of these records are in hardcopy, sorting through the duplicates is a manual and time intensive process. Despite these factors, CIA has been working diligently to respond to Plaintiffs' FOIA requests as soon as practicable.

26.   Third, CIA has experienced a busier than average caseload in recent months and did not anticipate this increased workload upon receipt of these requests. Notably, the number of FOIA requests sent to CIA has consistently increased since 2016. For example, in 2017 there were 2,572 FOIA requests submitted to CIA, but this number increased to 2,726 in 2018.   This obstacle was compounded by unforeseen competing deadlines and the departure of a senior FOIA expert.

27.   Given these factors, and the fact that both Requests 1 and 2 are very broad in nature, CIA requires additional time to process these materials.

## V. CIA's PROPOSED SCHEDULE FOR PROCESSING PLAINITFF'S REQUEST

28.   CIA has located over 1800 documents that are potentially responsive to Plaintiffs' requests. CIA has already made two

rolling productions in this matter on 6 March 2019 and 30 April
2019. CIA anticipates that processing Plaintiffs' requests will
take another three rolling productions on the following dates: 28
June 2019, 20 September 2019, and 19 December 2019. This estimate
accounts for the following: (1) reviewing documents to determine
whether they are responsive to Plaintiffs' requests;(2) scanning
stacks of records into CIA's FOIA database; (3) review of
documents to determine whether documents contain information
exempt from disclosure, and, if so, to identify any reasonably
segregable, nonexempt material; (4) review by SMEs when necessary;
(5) coordination with other Agencies, a process CIA does not have
complete control over; (6) review by the Office of General
Counsel; and (7) general preparation of the documents to be
released.

## VI. CONCLUSION

29.   For the foregoing reasons, CIA requires until 19 December 2019 to properly process Plaintiffs' FOIA requests. Accordingly, I respectfully submit this declaration in support of the Government's Response in Opposition to Plaintiffs' Motion for a Processing Schedule.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this _3rd_ day of June 2019.

Antoinette B. Shiner,
Information Review Officer,
Litigation Information Review Office,
Central Intelligence Agency