# EXHIBIT A –

# FOIA REQUEST NO. 1
# DATED 9 MAY 2017

05/09/2017  17:20   212-8547997                    EVP FINANCE                        PAGE  01/14

# KNIGHT
# FIRST AMENDMENT
# INSTITUTE

at Columbia University



**ALEX ABDO**
Senior Staff Attorney

**BRETT MAX KAUFMAN**
STAFF ATTORNEY

*F-2017-01688*

May 9, 2017

MAY 1 0 2017

**via FedEx**

National Security Agency
ATTN: FOIA Office
9800 Savage Road, STE 6932
Ft. George G. Meade, MD 20755-6932

**via facsimile**

Central Intelligence Agency
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: (703) 613-3007

Department of State
Office of Information Programs and
   Services
A/GIS/IPS/RL, SA-2, Suite 8100
Washington, D. C. 20522-0208
Fax: (202) 261-8579

**via email**

Office of the Director of National
Intelligence
Director, Information Management Division
Washington, D.C. 20511
dni-foia@dni.gov

Department of Justice
FOIA/PA Mail Referral Unit
Justice Management Division
Room 115
LOC Building

Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

Office of Legal Counsel
Melissa Golden
Lead Paralegal and FOIA Specialist
Room 5511, 950 Pennsylvania Avenue, N.W.
Department of Justice
Washington, DC 20530-0001
usdoj-officeoflegalcounsel@usdoj.gov

United States Army
Freedom of Information Office
7701 Telegraph Road, Suite 150
Alexandria, VA 22315-3905
usarmy.belvoir.hqda-oaa-aha.mbx.rmda-
foia@mail.mil

**via online submission**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843
https://efoia.fbi.gov

Office of the Attorney General
Laurie Day
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001
http://www.justice.gov/oip/oip-request.html

Department of Defense
Office of Freedom of Information
1155 Defense Pentagon, Room 2C757
Washington, D.C. 20301-1155
http://www.dod.mil/pubs/foi/request.html

2

Re:    **Freedom of Information Act Request**
       **Expedited Processing Requested**

To whom it may concern,

   The Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation (the "Requesters") submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records pertaining to agency prepublication review of writings by certain former government officials. This request is related to one filed on March 3, 2016 by the ACLU and currently being litigated by the Requesters in *American Civil Liberties Union v. Central Intelligence Agency*, No. 1:16-CV-1256 (D.D.C. filed June 21, 2016).

## I. Background

   Millions of current and former government employees are prohibited from publishing manuscripts that discuss their government service without first submitting the manuscripts for "pre-publication review."[1] In recent years, the prepublication-review system has become dysfunctional and politicized, resulting in escalating public and congressional concern.[2] The dysfunction and politicization of the prepublication-review system raises serious First Amendment concerns.[3]

---

[1] *See* Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process Is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTgg1j; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/pathdependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417 (2015).

[2] *See, e.g.*, Michael V. Hayden, Playing to the Edge: American Intelligence in the Age of Terror 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared regardless of the content. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

[3] *See, e.g.*, Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done?*, JustSecurity, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional,

05/09/2017  17:20   212-3547997                 EVP FINANCE                                    PAGE  04/14

On March 3, 2016, the ACLU sought the release of records relating to the prepublication review procedures of 19 government agencies. That request, attached hereto as Exhibit A, is now the subject of litigation.

Records disclosed in response to the ACLU's earlier FOIA request raise new questions about the way that the prepublication-review process operates in practice. Accordingly, the Requesters now seek additional records.

## II. Records requested

The Requesters seek the following records with respect to the individuals listed below:

1. all correspondence between the government and any of the individuals listed below relating to the prepublication review *or* publication of material intended to be or actually published in their personal capacities;

2. all inter- and intra-agency correspondence relating to the prepublication review or publication of material by any of the individuals listed below that was intended to be or actually was published by any of those individuals in their personal capacities;

3. all records reflecting decisions—interim, final, and after appeal—related to the prepublication review of material published by any of the individuals listed below in their personal capacities.

We seek the above records with respect to the individuals listed below. We ask that you give priority to the processing of records relating to the publications listed underneath each named individual:

1. Michael Hayden, former NSA Director, CIA Director, and former Deputy Director of National Intelligence

   a   *Playing to the Edge: American Intelligence in the Age of Terror* (2016)

2. John Ashcroft, former Attorney General

   a   *Never Again: Securing America and Restoring Justice* (2006)

3. Jose Rodriguez, former CIA Deputy Director for Operations

---

overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

4

     a. *Hard Measures: How Aggressive CIA Actions After 9/11 Saved American Lives* (2012)

4. John Rizzo, former Acting General Counsel for the CIA

     a. *Company Man: Thirty Years of Controversy and Crisis in the CIA* (2014)

5. Leon Panetta, former Secretary of Defense and CIA Director

     a. *Worthy Fights: A Memoir of Leadership in War and Peace* (2014)

6. Robert Gates, former Secretary of Defense

     a. *Duty: Memoirs of a Secretary at War* (2014)

7. Hillary Clinton, former Secretary of State

     a. *Hard Choices* (2014)

8. Donald Rumsfeld, former Secretary of Defense

     a. *Rumsfeld's Rules: Leadership Lessons in Business, Politics, War, and Life* (2013)

     b. *Known and Unknown: A Memoir* (2011)

9. Glenn Carle, former CIA officer

     a. *The Interrogator: An Education* (2011)

10. Jack Goldsmith, former Assistant Attorney General and Special Counsel to the General Counsel of the Department of Defense

     a. *The Terror Presidency* (2007)

     b. *The Cyberthreat, Government Network Operations, and the Fourth Amendment* (2010), https://www.brookings.edu/wp-content/uploads/2016/06/1208_4th_amendment_goldsmith.pdf

11. John Yoo, former Deputy Assistant Attorney General

     a. *Crisis and Command: A history of Executive Power from George Washington to George Bush* (2010)

     b. *The Terrorist Surveillance Program and the Constitution* (2007)

   c. *War by other means: An insider's account of the War on Terrorism* (2006)

   d. *The Powers of War and Peace: The Constitution and Foreign Affairs after 9/11* (2005)

   e. *Rational War and Constitutional Design* (2006)

   f. *War, Responsibility, and the Age of Terrorism* (2004)

12. Ali Soufan, former FBI agent

   a. *Will a CIA Veteran's Book Save a Terrorist?* (2012)

   b. *Black Banners: The Inside Story of 9/11 and the War Against al-Qaeda* (2011)

13. Ishmael Jones (pseudonym), former CIA officer

   a. *Dismantle the CIA's Station Chief System* (2009)

   b. *Waste and Fraud at the Central Intelligence Agency* (2009)

   c. *The Human Factor: Inside the CIA's Dysfunctional Intelligence Culture* (2008)

14. Michael Morell, former Deputy and Acting Director of the CIA

   a. *The Great War of Our Time: The CIA's Fight Against Terrorism—From al Qa'ida to ISIS* (2016)

15. John Kiriakou, former CIA analyst

   a. *The Convenient Terrorist: Abu Zubaydah and the Weird Wonderland of America's Secret Wars* (2017)

   b. *Doing Time Like a Spy: How the CIA Taught Me to Survive and Thrive in Prison* (2017)

   c. *The Reluctant Spy: My Secret Life in the CIA's War on Terror* (2010)

16. Valerie Plame Wilson, former CIA operations officer

   a. *Fair Game: My Life as a Spy, My Betrayal by the White House* (2007)

17. George Tenet, former Director of Central Intelligence

    a. *At the Center of the Storm: My Years at the CIA* (2007)

18. T.J. Waters, former CIA officer

    a. *The Suicide Squad: CIA Mysteries* (2013)

    b. *Class 11: My Story Inside the CIA's First Post-9/11 Spy Class* (2007)

19. Anthony Shaffer, former US Army Reserve Lieutenant Colonel

    a. *Operation Dark Heart* (2010)

20. Kevin Shipp, former CIA officer

    a. *From the Company of Shadows* (2012)

    b. *In From the Cold: Secrecy and Operations. A CIA Officer's True Story* (2010)

21. John Nixon, former CIA analyst

    a. *Debriefing the President: The Interrogation of Saddam Hussein* (2016)

22. James Mitchell, former CIA contractor

    a. *Enhanced Interrogation: Inside the Minds and Motives of the Islamic Terrorists Trying to Destroy America* (2016)

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

We ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B).

## III. Application for Expedited Processing

The Requesters seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the documents sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

05/09/2017  17:20    212-3547997         EVP FINANCE                          PAGE  08/14

*A. The Requesters are primarily engaged in*
*disseminating information in order to inform the public*
*about actual or alleged government activity.*

The Requesters are "primarily engaged in disseminating information"
within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute is a newly established
organization at Columbia University dedicated to defending and
strengthen ng the freedoms of speech and the press in the digital age.
Research and public education are essential to the Institute's mission.
Obtaining information about government activity, analyzing that
information, and publishing and disseminating it to the press and public
are among the core activities the Institute was established to perform. *See,*
*e.g.*, among others, *ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C.
2004) (finding non-profit public interest group that "gathers information of
potential interest to a segment of the public, uses its editorial skills to turn
the raw material into a distinct work, and distributes that work to an
audience" to be "primarily engaged in disseminating information").

The ACLU is similarly "primarily engaged in disseminating
information" within the meaning of FOIA. Obtaining information about
government activity, analyzing that information, and widely publishing
and disseminating that information to the press and public are critical and
substantial components of the ACLU's work and are among its primary
activities. *See id.*[4]

The ACLU regularly publishes *STAND*, a print magazine that reports
on and analyzes civil liberties-related current events. The magazine is
disseminated to over 620,000 people. The ACLU also publishes regular
updates and alerts via email to over 2.6 million subscribers (both ACLU
members and non-members). These updates are additionally broadcast to
over 3.2 million social media followers. The magazine as well as the email
and social-media alerts often include descriptions and analysis of
information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to
documents obtained through FOIA requests, as well as other breaking

---

[4] Courts have found that the ACLU as well as other organizations with similar
missions that engage in information-dissemination activities similar to the ACLU
are "primarily engaged in disseminating information." *See, e.g., Leadership Conference*
*on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F.
Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C.
2003).

05/09/2017  17:20     212-3547997          EVP FINANCE                          PAGE  09/14

news,[5] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[6]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[7] The ACLU also regularly publishes books,

---

[5] *See, e.g.,* Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit* (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, *Justice Department White Paper Details Rationale for Targeted Killing of Americans* (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement* (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[6] *See, e.g.,* Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program,* Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes,* Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program,* ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device,* Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret,* NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[7] *See, e.g.,* Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable -- But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-

"know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[8] For example, the ACLU's "Predator Drones FOIA"

---

freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[8] *See, e.g.,* Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case

webpage,   https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[9]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[10] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[11]; a summary of documents released in response to a FOIA

_____

Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[9] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[10] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[11] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

request related to the FISA Amendments Act[12]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[13]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[14]

The Requesters plan to analyze, publish, and disseminate to the public the information gathered through this request at no cost.

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The documents sought are urgently needed to inform the public about actual or alleged government activity. See 5 U.S.C. § 552(a)(6)(E)(v)(II).

While agencies' pre-publication regulations are in part public, the implementation of those regulations is almost entirely invisible outside the government. The records requested here are urgently needed to allow the public to better understand the way the regulations are implemented, and to enable it to evaluate whether agencies' prepublication-review processes are effective and fair. The records would also allow the public to better understand the lawfulness of agencies' activity on a matter that closely relates to fundamental rights and gives room for abuse of discretion, impacting public trust in government. The effectiveness, fairness, and lawfulness of the prepublication-review process is a matter of significant public interest and ongoing media attention.[15]

---

[12] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[13] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/other/statistics-nsls-produced-dod.

[14] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[15] *See, e.g.*, Thomas Reed Willemain, *A Personal Tale of Prepublication Review*, Lawfare, Jan. 10, 2017, https://www.lawfareblog.com/personal-tale-prepublication-review; Nada Bakos & John Nixon, *The CIA Is Delaying Our Books' Publication, and That Hurts Our Democracy*, Wash. Post, Dec. 22, 2016, https://www.washingtonpost.com/opinions/the-cia-is-delaying-our-books-publication-and-that-hurts-our-democracy/2016/12/22/068f115c-ba8c-11e6-94ac-3d324840106c_story.html?utm_term=.6c1309f097e3; David Kris, *The CIA's New Guidelines Governing Publicly Available Information*, Lawfare, Mar. 21, 2017, https://www.lawfareblog.com/cias-new-guidelines-governing-publicly-available-information; *see also supra* notes 2 and 3.

For these reasons, the Requesters are entitled to expedited processing.

## IV. Application for Waiver or Limitation of Fees

The Requesters seek a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Requesters' commercial interests. The requesters will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms—in scholarly publications, in long-form reports, and in short-form essays.

The Requesters also request a waiver of search and review fees on the grounds that they are "representative[s] of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Requesters each meet the statutory definition of a "representative of the news media" because each "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012);

*ACLU of Wash. V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the requesters, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53 – 54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Requesters are entitled to a fee waiver.

*       *       *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email. Please direct any correspondence and responses to this request to Alex Abdo.

I certify that the above is true and correct to the best of my knowledge.

Sincerely,

Alex Abdo[*]
Knight First Amendment Institute at
   Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
alex.abdo@knightcolumbia.org
(212) 854-9600

Brett Max Kaufman
Center for Democracy
American Civil Liberties Union
   Foundation
125 Broad Street, 17th Floor
New York, NY 10004
bkaufman@aclu.org
(212) 549-2603

---

[*] The Knight First Amendment Institute appreciates the assistance of Alexandra Sinclair, Renata Sayão, Ramya Krishnan, Maria Emilia Mamberti, and Jeffrey S. Stein in the drafting of this request.

14

# EXHIBIT B –

# CIA ACKNOWLEDGEMENT LETTER DATED 15 MAY 2017

Central Intelligence Agency



Washington, D.C. 20505

15 May 2017

Mr. Alex Abdo
Knight First Amendment Institute at
 Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027

Reference: F-2017-01688

Dear Mr. Abdo:

On 10 May 2017, the office of the Information and Privacy Coordinator received your 9 May 2017 Freedom of Information Act (FOIA) request, submitted on behalf of the Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation, for **the following records with respect to the individuals listed below:**

1. **all correspondence between the government and any of the individuals listed below relating to the prepublication review or publication of material intended to be or actually published in their personal capacities;**

2. **all inter- and intra-agency correspondence relating to the prepublication review or publication of material by any of the individuals listed below that was intended to be or actually was published by any of those individuals in their personal capacities;**

3. **all records reflecting decisions - interim, final, and after appeal - related to the prepublication review of material published by any of the individuals listed below in their personal capacities.**

**We seek the above records with respect to the individuals listed below. We ask that you give priority to the processing of records relating to the publications listed underneath each named individual:**

1. **Michael Hayden, former NSA Director, CIA Director, and former Deputy Director of National Intelligence**

    a. *Playing to the Edge: American Intelligence in the Age of Terror* **(2016)**

2. **John Ashcroft, former Attorney General**

    a. *Never Again: Securing America and Restoring Justice* **(2006)**

3. **Jose Rodriguez, former CIA Deputy Director for Operations**

    a. *Hard Measures: How Aggressive CIA Actions After 9/11 Saved American Lives* **(2012)**

4.  **John Rizzo**, former Acting General Counsel for the CIA

    a.  *Company Man: Thirty Years of Controversy and Crisis in the CIA* (2014)

5.  **Leon Panetta**, former Secretary of Defense and CIA Director

    a.  *Worthy Fights: A Memoir of Leadership in War and Peace* (2014)

6.  **Robert Gates**, former Secretary of Defense

    a.  *Duty: Memoirs of a Secretary at War* (2014)

7.  **Hillary Clinton**, former Secretary of State

    a.  *Hard Choices* (2014)

8.  **Donald Rumsfeld**, former Secretary of Defense

    a.  *Rumsfeld's Rules: Leadership Lessons in Business, Politics, War, and Life* (2013)

    b.  *Known and Unknown: A Memoir* (2011)

9.  **Glenn Carle**, former CIA officer

    a.  *The Interrogator: An Education* (2011)

10. **Jack Goldsmith**, former Assistant Attorney General and Special Counsel to the General Counsel of the Department of Defense

    a.  *The Terror Presidency* (2007)

    b.  *The Cyberthreat, Government Network Operations, and the Fourth Amendment* (2010), https://www.brookings.edu/wp-content/uploads/2016/06/1208_4th_amendment_goldsmith.pdf

11. **John Yoo**, former Deputy Assistant Attorney General

    a.  *Crisis and Command: A history of Executive Power from George Washington to George Bush* (2010)

    b.  *The Terrorist Surveillance Program and the Constitution* (2007)

    c.  *War by other means: An insider's account of the War on Terrorism* (2006)

    d.  *The Powers of War and Peace: The Constitution and Foreign Affairs after 9/11* (2005)

    e.  *Rational War and Constitutional Design* (2006)

    f.  *War, Responsibility, and the Age of Terrorism* (2004)

12. **Ali Soufan, former FBI agent**

 a. *Will a CIA Veteran's Book Save a Terrorist?* (2012)

 b. *Black Banners: The Inside Story of 9/11 and the War Against al-Qaeda* (2011)

13. **Ishmael Jones (pseudonym), former CIA officer**

 a. *Dismantle the CIA's Station Chief System* (2009)

 b. *Waste and Fraud at the Central Intelligence Agency* (2009)

 c. *The Human Factor: Inside the CIA's Dysfunctional Intelligence Culture* (2008)

14. **Michael Morell, former Deputy and Acting Director of the CIA**

 a. *The Great War of Our Time: The CIA's Fight Against Terrorism---From al Qa'ida to ISIS* (2015)

15. **John Kiriakou, former CIA analyst**

 a. *The Convenient Terrorist: Abu Zubaydah and the Weird Wonderland of America's Secret Wars* (2017)

 a. *Doing Time Like a Spy: How the CIA Taught Me to Survive and Thrive in Prison* (2017)

 b. *The Reluctant Spy: My Secret Life in the CIA's War on Terror* (2010)

16. **Valerie Plame Wilson, former CIA operations officer**

 a. *Fair Game: My Life as a Spy, My Betrayal by the White House* (2007)

17. **George Tenet, former Director of Central Intelligence**

 a. *At the Center of the Storm: My Years at the CIA* (2007)

18. **T.J. Waters, former CIA officer**

 a. *The Suicide Squad: CIA Mysteries* (2013)

 b. *Class 11: My Story Inside the CIA's First Post-9/11 Spy Class* (2007)

19. **Anthony Shaffer, former US Army Reserve Lieutenant Colonel**

 a. *Operation Dark Heart* (2010)

20. **Kevin Shipp, former CIA officer**

    a. *From the Company of Shadows* (2012)

    b. *In From the Cold: Secrecy and Operations. A CIA Officer's True Story* (2010)

21. **John Nixon, former CIA analyst**

    a. *Debriefing the President: The Interrogation of Saddam Hussein* (2016)

22. **James Mitchell, former CIA contractor**

    a. *Enhanced Interrogation: Inside the Minds and Motives of the Islamic Terrorists Trying to Destroy America* (2016)

**Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. See 5 U.S.C. § 552(b).**

You have requested expedited processing. Generally, we handle all requests in the order we receive them; that is "first-in, first out." We make exceptions to this rule when a requester establishes a compelling need in accordance with our regulations. We have reviewed your request and determined it does not meet the criteria for expedited processing. Specifically, the request-neither involves an imminent threat to the life or physical safety of an individual, nor is it made "by a person primarily engaged in disseminating information, and the information is relevant to a subject of public urgency concerning an actual or alleged or Federal activity." Therefore, we have determined that you have not established a "compelling need" for the information as set forth in 32 CFR § 1900.34. Your request for expedited processing is hereby denied. You may appeal this decision, in my care, within 90 days from the date of this letter. Should you choose to appeal the denial of your request for expedited processing, you are encouraged to provide an explanation supporting your appeal.

Our officers will review your request and will advise you should they encounter any problems or if they cannot begin the search without additional information. We have assigned your request the reference number above. Please use this number when corresponding so that we can identify it easily. Unless you object, we will limit our search to CIA-originated records up to and including the date the Agency starts its search. In accordance with our regulations, as a matter of administrative discretion, the Agency has waived the fees for this request.

Sincerely,

*[signature]*

Allison Fong
Information and Privacy Coordinator

# EXHIBIT C –

# PLAINTIFF'S OBJECTION LETTER TO CIA'S REQUEST TO LIMIT THE SCOPE OF REQUEST NO. 1

# DATED 22 MAY 2017

C0668774817  13:47    212-8547997    UNCLASSIFIED FINANCE                    PAGE   01/02



ALEX ABDO
Senior Staff Attorney



BRETT MAX KAUFMAN
STAFF ATTORNEY

May 22, 2017

via facsimile

Central Intelligence Agency
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: (703) 613-3007

MAY 2 2 2017

        **Re:**    **Freedom of Information Act Request**
               **F-2017-01688**

Ms. Fong,

On May 22, 2017, we received your letter of May 15, 2017, in which you acknowledged receipt of our Freedom of Information Act request relating to the prepublication review of the writings of specified individuals, denied expedited processing, and granted a fee waiver.

Your letter stated that "[u]nless you object, we will limit our search to CIA-originated records." We write to object to your narrowing of our request to CIA-originated records. Our request seeks all records in the CIA's possession that are responsive to the request's terms.

Also, if possible, we would much prefer that you communicate with us via email, rather than physical mail. Email is, of course, faster and more efficient than physical mail, and it seems perfectly suited to correspondence related to Freedom of Information Act requests, for which speed matters. My email address is alex.abdo@knightcolumbia.org.

535 West 116th Street, 314 Low Library, New York, NY 10027  |  knightcolumbia.org  |  (212) 854-9600  |  alex.abdo@knightcolumbia.org

Sincerely,

Alex Abdo
Knight First Amendment Institute at
  Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
alex.abdo@knightcolumbia.org
(212) 854-9600

Brett Max Kaufman
Center for Democracy
American Civil Liberties Union
  Foundation
125 Broad Street, 17th Floor
New York, NY 10004
bkaufman@aclu.org
(212) 549-2603

2

# EXHIBIT D –

# CIA'S LETTER TO PLAINTIFF REQUESTING CLARIFICATION RE THE BROAD SCOPE OF REQUEST NO. 1

# DATED 31 OCT 2017

Central Intelligence Agency



Washington, D.C. 20505

31 October 2017

Mr. Alex Abdo
Knight First Amendment Institute at
  Columbia University
314 Low Library
535 West 116th Street
New York, NY  10027

Reference:  F-2017-01688

Dear Mr. Abdo:

This is further to our letter dated 15 May 2017 concerning your 9 May 2017 Freedom of Information Act (FOIA) request, submitted on behalf of the Knight First Amendment Institute of Columbia University, and the American Civil Liberties Union, and the American Civil Liberties Union Foundation for the following:

1. **All correspondence between the government and any of the 22 individuals listed in your request relating to the prepublication review of publication of material intended to be or actually published in their personal capabilities;**

2. **All inter-and intra-agency correspondence relating to the prepublication review of publication of material by any of the 22 individuals listed in your request that was intended to be or actually was published by any of those individuals in their personal capacities;**

3. **All records reflecting decisions – interim, final, and after appeal –related to the prepublication review of material published by any of the 22 individuals listed in your request in their personal capacities.**

Our office would like to reach out about the clarification pertaining to the scope of your request. As your request is written, the interpretation has been described in different ways.  For example, you said that you wish for us to give priority to the processing of records related to the named publications for each of the 22 named individuals as referenced in your request.  A copy of our 15 May 2017 letter is enclosed to help you in this communication.  We are asking that you clarify this part of your request as we understood this to be for records related to the named publications only.  We will hold your request in abeyance for 45 days from the date of this letter pending your response.

Sincerely,

Allison Fong
Information and Privacy Coordinator

Enclosure

# EXHIBIT E –

# FOIA REQUEST NO. 2

# DATED 13 DEC 2017

C06719741

F-2018-00571

# KNIGHT
# FIRST AMENDMENT
# INSTITUTE
at Columbia University



December 13, 2017

DEC 18 2017

**via FedEx**

Headquarters Air Force / AAII (FOIA)
1000 Air Force Pentagon
Washington, D.C. 20330-1000

Commandant (CG-611)
Attn: FOIA Officer
U.S. Coast Guard
2701 Martin Luther King, Jr. Ave., SE
Stop-7710
Washington, D.C. 20593-7710

Defense Intelligence Agency
Attn: FAC2 AI (FOIA)
7400 Pentagon
Washington, D.C. 20301-7400

Department of Energy
FOIA Requester Service Center
1000 Independence Ave., SW
Mail Stop MA-46
Washington, D.C. 20585

Department of Homeland Security
Sam Kaplan
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
245 Murray Lane SW
Stop-0655
Washington, D.C. 20528-0655

FOIA Request
Department of the Treasury
Washington, D.C. 20220

1140 Amsterdam Ave., 206 Kent Hall, New York, NY 10027  |  knightcolumbia.org  |  (212) 854-1620  |  ramya.krishnan@knightcolumbia.org

C06719741

Freedom of Information & Privacy Act Unit (SARF)
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

Headquarters U.S. Marine Corps
FOIA/PA Section (ARSF)
3000 Marine Corps Pentagon
Washington, D.C. 20350-3000

National Geospatial-Intelligence Agency
FOIA/PA Requester Service Center
Mail Stop S01-EGM
7500 GEOINT Drive, MS N22-SISM
Springfield, VA 22150-7500

National Reconnaissance Office
OCIO/Information Review and Release Group
14675 Lee Road
Chantilly, VA 20151-1715

Office of the Chief of Naval Operations
Department of the Navy
FOIA/Privacy Act Program Office/Service Center
Attn: DNS 36
2000 Navy Pentagon
Washington, D.C. 20350-2000

Federal Bureau of Investigation
FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Office of Inspector General
Central Intelligence Agency
Washington, D.C. 20505

Department of Defense
Freedom of Information Division
1155 Defense Pentagon
Washington, D.C. 20301-1155

C06719741

National Security Agency
FOIA/PA Office
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248

Office of Information Programs and Services
A/GIS/IPS/RL, Suite 8100
U.S. Department of State
Washington, D. C. 20522-0208

**via email**

Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511
dni-foia@dni.gov

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

United States Army
Freedom of Information Office
7701 Telegraph Road, Suite 150
Alexandria, VA 22315-3905
usarmy.belvoir.hqda-oaa-ahs.mbx.rmda-foia@mail.mil

        Re:    **Freedom of Information Act Request**
               **Expedited Processing Requested**

To whom it may concern,

   The Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation (the "Requesters") submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records pertaining to the prepublication-review requirements of Intelligence Community ("IC") agencies. This request is related to two earlier ones, the first filed on March 3, 2016 and currently being litigated by the Requesters in *American Civil Liberties Union v. Central Intelligence Agency*, No. 1:16-CV-1256 (D.D.C. filed June 21, 2016), and the second filed on May 9, 2017.

3

C06719741

## I. Background

Millions of current and former government employees are prohibited from publishing anything that discusses their government service without first submitting their publications to "prepublication review."[1] The government's prepublication-review procedures have become dysfunctional and politicized, resulting in escalating public and congressional concern.[2] The dysfunction and politicization of the prepublication-review procedures raises serious First Amendment concerns.[3]

On March 3, 2016, the ACLU sought the release of records relating to the prepublication-review procedures of 19 government agencies and agency components.[4] That request is now the subject of litigation by the Requesters.

On May 9, 2017, the Requesters sought the release of records pertaining to prepublication review of writings by certain former government officials.[5]

---

[1] *See* Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process Is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTggIj; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/pathdependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417 (2015).

[2] *See, e.g.*, Michael V. Hayden, Playing to the Edge: American Intelligence in the Age of Terror 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared regardless of the content. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

[3] *See, e.g.*, Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done*, Just Security, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional, overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

[4] A copy of the request may be found at https://perma.cc/48JC-FW9H.

[5] A copy of the request may be found at https://perma.cc/WBK4-LM3M.

C06719741

Records disclosed in response to these requests raise new questions about how the prepublication-review procedures are administered in practice and the extent to which those procedures have been the subject of internal investigation or proposed reform. Accordingly, the Requesters now seek additional records.

## II. Records requested

In relation to each agency, the Requesters seek the release of the following records:

1. all non-disclosure agreements and other agreements, including templates or standard forms of such agreements, imposing prepublication-review obligations on agency and/or former agency employees;

2. all documents relating to administrative appeals filed from prepublication-review determinations, including but not limited to:

   a. administrative appeals;

   b. any correspondence or back-and-forth between an agency and an individual who filed an administrative appeal; and

   c. final decisions with respect to administrative appeals;

3. all documents relating to any form of sanction imposed or considered for imposition, on agency and/or former agency employees for failure to comply with their prepublication-review obligations.

In relation to the Central Intelligence Agency ("CIA") and the CIA's Office of Inspector General ("CIA OIG"), the Requesters also seek the release of the following:

4. all documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including any final report.[6]

In relation to the Department of Homeland Security ("DHS"), the Requesters also seek the release of the following:

_____

[6] *See, e.g.,* Greg Miller and Julia Tate, *CIA probes publication review board over allegations of selective censorship,* Wash. Post, May 31, 2012, http://wapo st/2iLpUuP.

5

C06719741

5. all documents relating to consideration of proposed "Directive 110-03, Review of Official DHS Information for Public Release" and "Instruction 110-03-001, Review of External Publications," including the non-concurrences of the Office of Public Affairs and Domestic Nuclear Detection Office;[7] and

6. all directives, instructions, policies, or guidance relating to prepublication review approved after the cut-off date used by DHS in relation to the FOIA request filed by the Requesters on March 3, 2016.

In relation to the Office of the Director of National Intelligence ("ODNI", the Requesters also seek the release of the following:

7. all IC-wide policies regarding prepublication review issued by the Director of National Intelligence;[8] and

8. all reports, memoranda, and correspondence relating to the adequacy of IC information technology efforts to improve and expedite prepublication review.[9]

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. See 5 U.S.C. § 552(b).

---

[7] See DHS memorandum titled "Directive 110-03, Review of Official DHS Information for Public Release & Instruction 110-03-001, Review of External Publications," dated July 14, 2014, and produced in response to the FOIA request filed by the Requesters on May 9, 2017 (recommending approval of the Directive and Instruction to "provide uniform policy guidance for Department Components when given the opportunity to review materials written by DHS employees for external publication not necessarily related to their official duties" and noting non-concurrences from the Office of Public Affairs and Domestic Nuclear Detection Office). That memorandum is attached hereto as **Exhibit A**.

[8] See H.R. Rep. No. 114-573, at 7 (2016) (directing that, no later than 180 days after the enactment of the Intelligence Authorization Act For Fiscal Year 2017, the Director of National Intelligence "issue an IC-wide policy regarding prepublication review").

[9] Id. at 8 (directing that, no later than 180 days after the enactment of the Intelligence Authorization Act For Fiscal Year 2017, the Director of National Intelligence "provide to the congressional intelligence committees a report on the adequacy of IC information technology efforts to improve and expedite prepublication review processes, and the resources needed to ensure that IC elements can meet this direction").

6

C06719741
UNCLASSIFIED

We ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B).

### III. Application for Expedited Processing

The Requesters seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the documents sought because the information they contain is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*A. The Requesters are primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Requesters are "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute is a newly established organization at Columbia University dedicated to defending and strengthening the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute was established to perform. *See, e.g.,* among others, *ACLU v. DOJ,* 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The ACLU is similarly "primarily engaged in disseminating information" within the meaning of FOIA. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See id.*[10]

The ACLU regularly publishes *STAND,* a print magazine that reports on and analyzes civil liberties-related current events. The magazine is

---

[10] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU,* 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

UNCLASSIFIED

C06719741

disseminated to over 620,000 people. The ACLU also publishes regular updates and alerts via email to over 2.6 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.2 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[11] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[12]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

---

[11] See, e.g., Press Release, American Civil Liberties Union, *U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit* (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *Secret Documents Describe Graphic Abuse and Admit Mistakes* (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, *U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit* (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, *Justice Department White Paper Details Rationale for Targeted Killing of Americans* (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement* (Sept. 14, 2012), https://www.aclu.org/documents-show-fbi-monitored-bay-area-occupy-movement-inside-bay-area.com.

[12] See, e.g., Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

8

C06719741

ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[13] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

---

[13] *See, e.g.,* Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

The ACLU website includes many features on information obtained through the FOIA.[14] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[15]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel

---

[14] *See, e.g.,* Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens,* ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense,* ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling,* ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA,* ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA,* ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ · Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request,* ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA,* ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD,* ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[15] *The Torture Database,* ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database,* ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database,* ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database,* ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

10

C06719741

memos relating to interrogation, detention, rendition, and surveillance.[16] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[17]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[18]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[19]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[20]

The Requesters plan to analyze, publish, and disseminate to the public the information gathered through this request at no cost.

### B. The records sought are urgently needed to inform the public about actual or alleged government activity.

The documents sought are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).

While agencies' prepublication regulations are in part public, the implementation of those regulations is almost entirely invisible outside the government. The records requested here are urgently needed to allow the public to better understand the way the regulations are implemented, and to enable it to evaluate whether agencies' prepublication-review processes are effective and fair. The records would also allow the public to better understand the lawfulness of agencies' activity on a matter that closely relates to fundamental rights but which presents a significant opportunity for the abuse of discretion, impacting public trust in government. The

---

[16] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[17] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[18] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[19] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/other/statistics-nsls-produced-dod.

[20] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

11

C06719741

effectiveness, fairness, and lawfulness of the prepublication-review process is a matter of significant public interest and ongoing media attention.[21]

For these reasons, the Requesters are entitled to expedited processing.

## IV. Application for Waiver or Limitation of Fees

The Requesters seek a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.' 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the records would be in the public interest. Moreover, disclosure would not further the Requesters' commercial interests. The requesters will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute will perform scholarly research on the application of the First Amendment in the digital era. The Institute is in the midst of inaugurating a research program that will bring together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It will publish that commentary in many forms—in scholarly publications, in long-form reports, and in short-form essays.

The Requesters also request a waiver of search and review fees on the grounds that they are "representative[s] of the news media" within the

---

[21] *See, e.g.*, Thomas Reed Willemain, *A Personal Tale of Prepublication Review*, Lawfare, Jan. 10, 2017, https://www.lawfareblog.com/personal-tale-prepublication-review; Nada Bakos & John Nixon, *The CIA Is Delaying Our Books' Publication, and That Hurts Our Democracy*, Wash. Post, Dec. 22, 2016, https://www.washingtonpost.com/opinions/the-cia-is-delaying-our-books-publication-and-that-hurts-our-democracy/2016/12/22/068f115c-ba8c-11e6-94ac-3d324840106c_story.html?utm_term=.6e1309f097c3; David Kris, *The CIA's New Guidelines Governing Publicly Available Information*, Lawfare, Mar. 21, 2017, https://www.lawfareblog.com/cias-new-guidelines-governing-publicly-available-information; *see also supra* notes 2 and 3.

12

C06719741

meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Requesters each meet the statutory definition of a "representative of the news media" because each "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012); *ACLU of Wash. V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Requesters, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Requesters are entitled to a fee waiver.

*       *       *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email. Please direct any correspondence and responses to this request to Ramya Krishnan.

I certify that the above is true and correct to the best of my knowledge.

Sincerely,

/s/ Ramya Krishnan
Ramya Krishnan
Alex Abdo
Knight First Amendment Institute at
   Columbia University
1140 Amsterdam Avenue

13

C06719741

UNCLASSIFIED

206 Kent Hall
New York, NY 10027
ramya.krishnan@knightcolumbia.org
(212) 854-1620

Brett Max Kaufman
Center for Democracy
American Civil Liberties Union
 Foundation
125 Broad Street, 17th Floor
New York, NY 10004
bkaufman@aclu.org
(212) 549-2500

Enc:    Ex. A (DHS memorandum dated July 14, 2014)

C06719741

UNCLASSIFIED

U.S. Department of Homeland Security
Washington, DC 20528



# Homeland Security

DATE:                      July 14, 2014

MEMORANDUM FOR:            Michael Russell
                           Senior Counselor
                           DHS Adjudicator

FROM:                      Brendan LaCivita
                           Deputy Director, Strategic Communications
                           DHS Office of Public Affairs

SUBJECT:                   Directive 110-03, Review of Official DHS Information for Public
                           Release & Instruction 110-03-001, Review of External
                           Publications

**Summary**: This Directive and Instruction document provide uniform policy guidance for
Department Components when given the opportunity to review materials written by DHS
employees for external publication not necessarily related to their official duties.

**Need**: The Department does not have uniform policy guidance for the review of materials
written by DHS employees for external publication not necessarily related to their official duties.
Most large federal departments, including the Department of State and the Department of
Defense, have a uniform system in place for such employee-written materials.  In fact, you will
note in the draft Directive several authorities, including executive orders, delegated to federal
departments that support review of such materials.  It is important to note here the sole need for
such review is to prevent the unintentional release of sensitive, FOUO, or classified information
by DHS employees when writing materials meant for external publication not necessarily related
to their official duties.

**Explanation of Delegated Authorities**: The DHS Office of Public Affairs has been delegated
by the Secretary to oversee review of external communications/materials through both
Delegation Authority 2001, and Title 6, USC, "Secretary; functions," §112 (b)(1).

**Departmental Coordination:** This Directive was cleared by all Components except the Office
of the Inspector General (OIG), which claims an overall exemption from DHS Management
Directives because they challenge OIG's independent authority status, and the Domestic Nuclear
Detection Office (DNDO), which will not change its non-concurrence until its concerns have

C06719741

UNCLASSIFIED

been satisfactorily addressed by the Office of the General Counsel. Specifically, DNDO's concerns are:

- The scope of the types of publications needing OPA review is too broad to be implementable or enforceable. **OPA non-concurred and explained the MD clearly states what is/is not covered.**
- OPA should not have oversight over information exchanges between U.S. Government agencies or state, local, tribal, and territorial governments. **OPA non-concurred and referenced section II D, 3 which clearly states information to state, local, tribal, and territorial governments is exempt.**
- DNDO interprets the MD to cover conversations it has with industry partners concerning its programs and that OPA review of such information exchange is inappropriate and unnecessary. **OPA non-concurred and referenced section II D, 3 which clearly states information to industry partners is exempt.**
- The MD raises a constitutional issue in that OPA believes it is empowered to review unofficial information release to the public by employees or former employees as if OPA has lifetime control over individuals' speaking or writing. **OPA non-concurred and deferred action to OGC.**

**Recommendation:** While OPA was able to reach concurrence with DNDO on several other concerns raised we recommend you approve this Directive, either with or without OIG and DNDO concurrence, because currently there is no uniform Department review process in place for review of employee-written materials not necessarily related to their official duties. We also encourage approval as the policy supports a critical agency function in the review of employee-written materials, and because it supports several authorities, including executive orders, which grant federal agencies authority to review such materials.

C06719741



FedEx

SS

EP PIZA

20505
IAD
DC-US

7709 9442 7446   TRK# 0201

FRI - 15 DEC 10:30A
PRIORITY OVERNIGHT

NEW   10:30   7446   12.15

WASHINGTON DC 20505
REF: PPR3 FOIA
(703) 482-0623
DEPT:
INV:
PO:

TO   INFORMATION AND PRIVACY COORDINATOR
CENTRAL INTELLIGENCE AGENCY
CENTRAL INTELLIGENCE AGENCY

BILL SENDER

SHIP DATE: 14DEC17
ACTWGT: 0.50LB
CAD: 110793968/INET3920

ORIGIN ID: AREA   (212) 854-1129
KNIGHT FIRST AMENDMENT INSTITUTE
1140 AMSTERDAM AVE
206 KENT HALL
NEW YORK NY 10027
UNITED STATES US

◄ Insert shipping
  document here.

UNCLASSIFIED

# EXHIBIT F –

# CIA ACKNOWLEDGEMENT LETTER RE: FOIA REQUEST NO. 2

# DATED 20 DEC 2017

Central Intelligence Agency

Washington, D.C. 20505

20 December 2017

Ms. Ramya Krishnan
Knight First Amendment Institute at
Columbia University
1140 Amsterdam Avenue
206 Kent Hall
New York, NY 10027

Reference:  F-2018-00511

Dear Ms. Krishnan:

On 18 December 2017, the office of the Information and Privacy Coordinator received your 13 December 2017 Freedom of Information Act (FOIA) request, submitted on behalf of the Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the America Civil Liberties Union Foundation, for **records pertaining to the prepublication-review requirements of Intelligence Community ("IC") agencies.  Specifically, [you] seek the release of the following records:**

1. **All non-disclosure agreements and other agreements, including templates or standard forms of such agreements, imposing prepublication-review obligations on agency and/or former agency employees;**

2. **All documents relating to administrative appeals filed from prepublication-review determinations, including but not limited to:**

   a. **Administrative appeals;**

   b. **Any correspondence or back-and-forth between an agency and an individual who filed an administrative appeal; and,**

   c. **Final decisions with respect to administrative appeals;**

3. **All documents relating to any form of sanction imposed, or considered for imposition, on agency and/or former agency employees for failure to comply with their prepublication-review obligations; and,**

4. **All documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report.**

You have requested expedited processing. Generally, we handle all requests in the order we receive them; that is "first-in, first out." We make exceptions to this rule when a requester establishes a compelling need in accordance with our regulations. We have reviewed your request and determined it does not meet the criteria for expedited processing. Specifically, the request neither involves an imminent threat to the life or physical safety of an individual, nor is it made "by a person primarily engaged in disseminating information, and the information is relevant to a subject of public urgency concerning an actual or alleged or Federal activity." Therefore, we have determined that you have not established a "compelling need" for the information as set forth in 32 CFR § 1900.34. Your request for expedited processing is hereby denied. You may appeal this decision, in my care, within 90 days from the date of this letter. Should you choose to appeal the denial of your request for expedited processing, you are encouraged to provide an explanation supporting your appeal.

Our officers will review your request in more detail and will advise you should they encounter any problems or if they cannot begin the search without additional information or clarification. We have assigned your request the reference number above. Please use this number when corresponding so that we can identify it easily. Unless you object, we will limit our search to CIA-originated records up to and including the date the Agency starts its search. In accordance with our regulations, as a matter of administrative discretion, the Agency has waived the fees for this request.

Sincerely,

Allison Fong
Information and Privacy Coordinator

# EXHIBIT G –

# CIA'S LETTER TO PLAINTIFF RE REQUEST TO MODIFY THE SCOPE OF REQUEST NO. 2

# DATED 12 JAN 2018

Central Intelligence Agency



Washington, D.C. 20505

12 January 2018
Ms. Ramya Krishnan
Knight First Amendment Institute at
  Columbia University
1140 Amsterdam Avenue
206 Kent Hall
New York, NY 10027

Reference:  F-2018-00511

Dear Ms. Krishnan:

This is further to our letter dated 20 December 2017 regarding your 13 December 2017 Freedom of Information Act request, submitted on behalf of the Knight First Amendment Institute at Columbia University, the American Civil Liberties Union, and the American Civil Liberties Union Foundation, for **records pertaining to the prepublication-review requirements of Intelligence Community ("IC") agencies.  Specifically, [you] seek the release of the following records:**

1. **All non-disclosure agreements and other agreements, including templates or standard forms of such agreements, imposing prepublication-review obligations on agency and/or former agency employees;**

2. **All documents relating to administrative appeals filed from prepublication-review determinations, including but not limited to:**

    a. **Administrative appeals;**

    b. **Any correspondence or back-and-forth between an agency and an individual who filed an administrative appeal; and,**

    c. **Final decisions with respect to administrative appeals;**

3. **All documents relating to any form of sanction imposed, or considered for imposition, on agency and/or former agency employees for failure to comply with their prepublication-review obligations; and,**

4. **All documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report.**

Upon review concerning the scope of your request, the appropriate office suggested that we reach out to you as your request is quite broad.  Therefore, we are reaching out to you to help revise your request in a manner that helps you and us with our search efforts.  We recommend the following modifications to your request.

With respect to Item 1, we would like to propose modifying your request to **"All non-disclosure agreement forms/templates, currently in use, imposing pre-publication review obligations on agency and/or former agency employees within the past year."**

With respect to Item 2, we would like to propose modifying your request to **"All documents filed within the past year relating to administrative appeals filed from prepublication-review determinations, including but not limited to: a.  Administrative appeals; b.  Any correspondence or back-and-forth between an agency and an individual who filed an administrative appeal; and, c.  Final decisions with respect to administrative appeals."**

With respect to Item 3, we would like to propose modifying your request to **"All documents relating to any form of sanction imposed, or considered for imposition, on agency and/or former agency employees for failure to comply with their prepublication-review obligations within the past year."**

With respect to Item 4, we would like to propose modifying your request to **"All documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report, within the past year."**

We will hold your request in abeyance for 45 days from the date of this letter pending your response to our proposed modifications.

Sincerely,

Allison Fong
Information and Privacy Coordinator

# EXHIBIT H –

# PLAINTIFF'S LETTER TO CIA AGREEING TO NARROW THE SCOPE OF ITEMS 1-3 LISTED IN REQUEST NO. 2

# DATED 24 JAN 2018

C06725790

**KNIGHT
FIRST AMENDMENT
INSTITUTE**

at Columbia University



January 24, 2018

Allison Fong
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

JAN 29 2018

Re:   **FOIA Request No. F-2018-00511**

Dear Ms. Fong,

I am writing in response to your letter dated January 12, 2018, which proposed a number of modifications to the Freedom of Information Act request we submitted on December 13, 2017.

With respect to Item 1, we accept your proposal to limit our request to "[a]ll non-disclosure agreement forms/templates" that are "currently in use," but we do not accept the additional limitation of "within the past year."

With respect to Item 2, we propose that the agency process the last year of responsive records for now, subject to our right to ask that the agency process responsive records for additional years. We would likely only exercise that right if there are few responsive records from the last year or if the records from the last year do not appear representative.

With respect to Item 3, we propose that the agency process the last year of responsive records for now, subject to our right to ask that the agency process responsive records for additional years. We would likely only exercise that right if there are few responsive records from the last year or if the records from the last year do not appear representative.

I would be happy to discuss your proposals and our response further. But, for the sake of convenience, I would be grateful if you could send all future correspondence via email.

Sincerely,

/s/ Ramya Krishnan
Ramya Krishnan

1140 Amsterdam Ave., 206 Kent Hall, New York, NY 10027  |  knightcolumbia.org  |  (212) 854-1620  |  ramya.krishnan@knightcolumbia.org

UNCLASSIFIED

Alex Abdo
Knight First Amendment Institute at
  Columbia University
1140 Amsterdam Avenue
206 Kent Hall
New York, NY 10027
ramya.krishnan@knightcolumbia.org
(212) 854-1620

Brett Max Kaufman
Center for Democracy
American Civil Liberties Union
  Foundation
125 Broad Street, 17th Floor
New York, NY 10004
bkaufman@aclu.org
(212) 549-2500

C06725790

UNCLASSIFIED

# FedEx Express                                      URGENT

**Name**

**Company**  *1000   Colonial Farm  (Gate 5*

**Address**

**City, State ZIP**  *McLean        VA      22102H*

**Telephone**

136596 REV 11/03 RR

ORIGIN ID:JREA    (212) 854-1129
KNIGHT FIRST AMENDMENT INSTITUTE

1140 AMSTERDAM AVE
206 KENT HALL
NEW YORK, NY 10027
UNITED STATES US

SHIP
ACTWGT: 0.50 LB
CAD: 11079206/INET3980

BILL SENDER

TO  **ALLISON FONG**

**CENTRAL INTELLIGENCE AGENCY**

**WASHINGTON DC 20505**
(703) 482-0623
INV:          RE: PPR 3 FOIA CIA
PO:           DEPT:

FedEx Express

**THU – 25 JAN 10:30A**
**PRIORITY OVERNIGHT**

TRK#
0201  7713 1889 1215

**19 PIZA**   *I P*   **22102**
VA-US
**IAD**

FID 82286 25JAN18 BC0A   545C1/8D48/8C8A

1215
01:28

1215
01:25

UNCLASSIFIED

Extremely Urgent

# EXHIBIT I –

# CIA'S LETTER TO PLAINTIFF REQUESTING CLARIFICATION RE ITEM 4 IN REQUEST NO. 2

# DATED 2 FEB 2018



Central Intelligence Agency

Washington, D.C. 20505

2 February 2018

Ms. Ramya Krishnan
Knight First Amendment Institute at
 Columbia University
1140 Amsterdam Avenue
206 Kent Hall
New York, NY 10027

Reference:  F-2018-00511

Dear Ms. Krishnan:

This acknowledges receipt of your 24 January 2018 letter, received in the office of the
Information and Privacy Coordinator on 29 January 2018, wherein your provided information
requested in our letter dated 12 January 2018 concerning your 13 December 2017 Freedom of
Information Act (FOIA) request for **records pertaining to the prepublication-review
requirements of Intelligence Community ("IC") agencies.  Specifically, [you] seek the
release of the following records:**

1. **All non-disclosure agreements and other agreements, including templates or
   standard forms of such agreements, imposing prepublication-review obligations on
   agency and/or former agency employees;**

2. **All documents relating to administrative appeals filed from prepublication-review
   determinations, including but not limited to:**

   a. **Administrative appeals;**

   b. **Any correspondence or back-and-forth between an agency and an individual
      who filed an administrative appeal; and,**

   c. **Final decisions with respect to administrative appeals;**

3. **All documents relating to any form of sanction imposed, or considered for
   imposition, on agency and/or former agency employees for failure to comply with
   their prepublication-review obligations; and,**

4.  **All documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report.**

Specifically, you advised that you would accepted our proposals in regards to the following:

1.  **All non-disclosure agreement forms/templates, currently in use, imposing prepublication-review obligations on agency and/or former agency employees;**

2.  **All documents filed within the past year relating to administrative appeals filed from prepublication-review determinations, including but not limited to:**

    a.  **Administrative appeals;**

    b.  **Any correspondence or back-and-forth between an agency and an individual who filed an administrative appeal; and,**

    c.  **Final decisions with respect to administrative appeals; and,**

3.  **All documents relating to any form of sanction imposed, or considered for imposition, on agency and/or former agency employees for failure to comply with their prepublication-review obligations within the past year.**

Unfortunately, your response did not include a determination in regards to Item 4. Specifically, we proposed modifying your request to **"All documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report, within the past year."** Without this determination, we are unable to process your request, as it remains too broad to search.

We will hold your request in abeyance for 45 days from the date of this letter pending your response.

Sincerely,

Allison Fong
Information and Privacy Coordinator

# EXHIBIT J –

# PLAINTIFF'S LETTER TO CIA REJECTING CIA'S REQUEST TO LIMIT ITEM 4 IN REQUEST NO. 2 AND PLAINTIFF'S COUNTER-PROPOSAL RE ITEM 4

# DATED 16 FEB 2018

C06730919

**KNIGHT**
**FIRST AMENDMENT**
**INSTITUTE**
at Columbia University



February 16, 2018

Allison Fong
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

FEB 22 2018

Re      FOIA Request No. F-2018-00511

Dear Ms. Fong,

I am writing in response to your letter dated February 2, 2018.

As a preliminary matter, we object to your characterization of our initial response dated January 24, 2018. You state that we "advised that [we] would accept[] [y]our proposals" in relation to items 1 to 3 of our FOIA request, but that is inaccurate. In fact, we accepted your proposal with respect to item 1 in part only, and we made counter-proposals with respect to items 2 and 3. We have attached our letter of January 24, 2018, which continues to represent our views of items 1 to 3 of our FOIA request.

Secondly, we reject your proposal to narrow item 4 to "All documents related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report, within the past year."

We propose instead narrowing item 4 to:

a.   Any document, including final report, related to the investigation begun by the CIA or CIA OIG in or about May 2012 into the composition and practices of the Prepublication Review Board[1] ("new item 4(a)");

b.   Any document, including final report, related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board within the last five years ("new item 4(b)").

---

[1] Greg Miller & Julia Tate, *CIA Probes Publication Review Board over Allegations of Selective Censorship*, Wash. Post, May 31, 2012, http://wapo.st/2iLpUuP.

475 Riverside Drive, Suite 302, New York, NY 10115  |  knightcolumbia.org  |  (646) 745-8506  |  ramya.krishnan@knightcolumbia.org

C06730919

This is our final position in relation to the scope of item 4. If you consider new item 4(b) overbroad, we request that you still begin processing new item 4(a), in addition to the remainder of our request. If you decide not to do so, we will deem you to have constructively denied our request in its entirety, and we may pursue other relief.

I would be happy to discuss your proposals and our response further. However, I reiterate our past request that future correspondence be sent via email.

Please note that the Knight First Amendment Institute at Columbia University has moved to 475 Riverside Drive, Suite 302, New York, NY 10115.

Sincerely,

/s/ Ramya Krishnan

Ramya Krishnan
Alex Abdo
Knight First Amendment Institute at
  Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
ramya.krishnan@knightcolumbia.org
(646) 745-8506

Brett Max Kaufman
Center for Democracy
American Civil Liberties Union
  Foundation
125 Broad Street, 17th Floor
New York, NY 10004
bkaufman@aclu.org
(212) 549-2500

C06730919

**KNIGHT
FIRST AMENDMENT
INSTITUTE**

at Columbia University



January 24, 2018

Allison Fong
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Re:   **FOIA Request No. F-2018-00511**

Dear Ms. Fong,

I am writing in response to your letter dated January 12, 2018, which proposed a number of modifications to the Freedom of Information Act request we submitted on December 13, 2017.

With respect to Item 1, we accept your proposal to limit our request to "[a]ll non-disclosure agreement forms/templates" that are "currently in use," but we do not accept the additional limitation of "within the past year."

With respect to Item 2, we propose that the agency process the last year of responsive records for now, subject to our right to ask that the agency process responsive records for additional years. We would likely only exercise that right if there are few responsive records from the last year or if the records from the last year do not appear representative.

With respect to Item 3, we propose that the agency process the last year of responsive records for now, subject to our right to ask that the agency process responsive records for additional years. We would likely only exercise that right if there are few responsive records from the last year or if the records from the last year do not appear representative.

I would be happy to discuss your proposals and our response further. But, for the sake of convenience, I would be grateful if you could send all future correspondence via email.

Sincerely,

/s/ Ramya Krishnan
Ramya Krishnan

1140 Amsterdam Ave., 206 Kent Hall, New York, NY 10027  |  knightcolumbia.org  |  (212) 854-1620  |  ramya.krishnan@knightcolumbia.org



FedEx®
Express



SHIP DATE: 20FEB18
ACT WGT: 0.50 LB
CAD: 110792968/INET3980

BIL L SENDER

ORIGIN ID:JREA      (646) 745-8509
KNIGHT FIRST AMENDMENT INSTITUTE

475 RIVERSIDE DRIVE
SUITE 302
NEW YORK, NY 10115
UNITED STATES US

TO ALLISON FONG
CENTRAL INTELLIGENCE AGENCY
INFORMATION AND PRIVACY COORDINATOR
CENTRAL INTELLIGENCE AGENCY
WASHINGTON DC 20505

REF: PPR 3 FOIA

(703) 482-0623



WED - 21 FEB 10:30A
PRIORITY OVERNIGHT



TRK# 7715 2461 0412
0201

20505
IAD
DC-US

EP PIZA



# EXHIBIT K –

# CIA'S LETTER TO PLAINTIFFS SUMMARIZING PROPOSED MODIFICATIONS TO REQUEST NO. 2

# DATED 1 MAR 2018

Central Intelligence Agency



Washington, D.C. 20505

1 March 2018

Ms. Ramya Krishnan
Knight First Amendment Institute at
 Columbia University
475 Riverside Drive
Suite 302
New York, NY 10115

Reference: F-2018-00511

Dear Ms. Krishnan:

This acknowledges receipt of your 16 February 2018 letter, received in the office of the
Information and Privacy Coordinator on 22 February 2018, regarding your 13 December 2017
Freedom of Information Act (FOIA) request.  Based on your 16 February letter, CIA will
conduct a search for the following:

1.  **All non-disclosure agreement forms/templates, currently in use, imposing
    prepublication-review obligations on agency and/or former agency employees.**

2.  **All documents filed within the past year relating to administrative appeals filed
    from prepublication-review determinations, including but not limited to:**

    a.  **Administrative appeals;**

    b.  **Any correspondence or back-and-forth between an agency and an individual
        who filed an administrative appeal; and,**

    c.  **Final decisions with respect to administrative appeals.**

3.  **All documents relating to any form of sanction imposed, or considered for
    imposition, on agency and/or former agency employees for failure to comply with
    their prepublication-review obligations within the past year.**

4. **All document related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board, including the final report, specifically:**

    a. **Any document, including final report, related to the investigation begun by the CIA or CIA OIG in or about May 2012 into the composition and practices of the Prepublication Review Board; and,**

    b. **Any document, including final report, related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board within the last five years.**

With respect to Items 2 and 3, we note your request that you be permitted to ask the Agency to process records for additional years if you are dissatisfied with the Agency's response to the request for responsive records "within the past year." We are unable to accommodate that request, as we are unable to expand upon requests once a final response has been issued. However, if you are dissatisfied with the Agency's request to records within the past year that are responsive to Items 2 and 3, you may submit a new FOIA request for records for additional years. Alternatively, in order to ensure that you are satisfied with the Agency's processing of your request for Items 2 and 3, we propose searching for records responsive to Items 2 and 3 within the past five years. Please advise within 45 days whether either of these options are agreeable to you. We will hold your request in abeyance until we hear from you in writing.

We note your change of address and will update our records accordingly.

Sincerely,

Allison Fong
Information and Privacy Coordinator

# EXHIBIT L –

# CIA'S LETTER TO PLAINTIFFS SUMMARIZING PROPOSED MODIFICATIONS TO REQUEST NO. 2

# DATED 11 MAY 2018



Central Intelligence Agency

Washington, D.C. 20505

11 May 2018

Ms. Ramya Krishnan
Knight First Amendment Institute at
 Columbia University
475 Riverside Drive
Suite 302
New York, NY 10115

Reference:  F-2018-00511

Dear Ms. Krishnan:

This is further to our letter dated 1 March 2018 concerning your 13 December 2017 Freedom of
Information Act (FOIA) request, in which we propose the following modifications:

1. **All non-disclosure agreement forms/templates, currently in use, imposing
   prepublication-review obligations on agency and/or former agency employees,
   within the past five years.**

2. **All documents filed within the past five years relating to administrative appeals filed
   from prepublication-review determinations, including but not limited to:**

   a. **Administrative appeals;**

   b. **Any correspondence or back-and-forth between an agency and an individual
      who filed an administrative appeal; and,**

   c. **Final decisions with respect to administrative appeals.**

3. **All documents relating to any form of sanction imposed, or considered for
   imposition, on agency and/or former agency employees for failure to comply with
   their prepublication-review obligations within the past five years.**

4. **All document related to any investigation by the CIA or CIA OIG into the
   composition and practices of the Prepublication Review Board, including the final
   report, specifically:**

    a.   **Any document, including final report, related to the investigation begun by the CIA or CIA OIG in or about May 2012 into the composition and practices of the Prepublication Review Board; and,**

    b.   **Any document, including final report, related to any investigation by the CIA or CIA OIG into the composition and practices of the Prepublication Review Board within the last five years.**

As indicated in our 20 December 2017 letter, we will limit our search to CIA-originated records as described in our proposed modified request. Additionally, as also stated in our 20 December 2017 letter, in accordance with our regulations, as a matter of administrative discretion, the Agency has waived the fees for this request. Therefore, we will begin the search as proposed unless we hear from you otherwise in writing.

Sincerely,

Allison Fong
Information and Privacy Coordinator