# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br><br>        Plaintiffs<br><br>    v.<br><br>DEPARTMENT OF DEFENSE et al.<br><br>        Defendants | Civil Action No. 18-1129 (EGS) |

## <u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PROCESSING SCHEDULE OR, IN THE ALTERNATIVE, A STATUS CONFERENCE</u>

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union of the
  District of Columbia
915 15th Street, NW
Second Floor
Washington, D.C. 20005
T: 202.601.4266
artspitzer@aclu-nca.org

Jameel Jaffer (D.D.C. Bar No. MI0067)
Alex Abdo (admitted *pro hac vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
T: 646.745.8500
jameel.jaffer@knightcolumbia.org
alex.abdo@knightcolumbia.org

Brett Max Kaufman (D.D.C. Bar No. NY0224)
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bkaufman@aclu.org

*Counsel for Plaintiffs*

## INTRODUCTION

Plaintiffs have attempted for months to engage Defendant Central Intelligence Agency ("CIA") in good-faith negotiations to agree upon a processing and production schedule for responsive records. The CIA has responded with delay and obfuscation. Plaintiffs have now proposed a reasonable schedule for the processing of records long overdue under the Freedom of Information Act ("FOIA"), and the agency has failed to provide any adequate explanation of why Plaintiffs' proposed schedule would impose an unreasonable burden on the agency.

It has been over two years since Plaintiffs filed Request 1 and eighteen months since Plaintiffs filed Request 2, and the CIA refuses to reveal still to this day how many pages of records it has identified that are actually responsive to those requests. Nor does the government's brief acknowledge that, in addition to substantially narrowing the scope of both requests, Plaintiffs have agreed to exclude drafts of manuscripts submitted to the CIA for prepublication review. Instead, the CIA defends a lengthy processing schedule without providing the basic information that agencies routinely disclose in FOIA cases so that plaintiffs and courts can assess the reasonableness of proposed processing schedules.

Before addressing Defendants' opposition with respect to the CIA at greater length below, Plaintiffs offer an observation about Defendant Department of Homeland Security ("DHS"). On the eve of its original deadline to respond to Plaintiffs' motion, DHS reported that it had completed its production of responsive records—a full four months before the deadline it had proposed to Plaintiffs and was prepared to defend before the Court. As it turned out, all but eighteen pages that DHS has produced in response to Request 2 had already been produced by DHS in response to an

earlier FOIA request submitted by Plaintiffs.[1] In other words, DHS proposed—and forced Plaintiffs to file a motion challenging—a months-long schedule that was clearly unreasonable, to process records that had nearly all been processed and produced to Plaintiffs already. Unfortunately, DHS's negotiating posture is emblematic of the negotiating posture of Defendants in this case, and it affirms the need for close scrutiny by the Court of the CIA's claims in opposition to this motion.

## ARGUMENT

**I.    Plaintiffs' proposed processing schedule would not impose an unreasonable burden on the CIA.**

Plaintiffs' proposed processing schedule is reasonable in light of the limited processing information provided by the CIA and the agency's extensive and unjustified delay in processing. *See* Pls.' Mot. 9–10. The CIA has not demonstrated otherwise.

First, the CIA has not demonstrated that Plaintiffs' proposed processing schedule would "unduly burden the agency's already stretched FOIA personnel" or "compromise CIA's ability to meet existing deadlines in other FOIA cases." Defs.' Opp'n 9. The CIA's declaration cites "the number of FOIA requests sent to CIA" in 2017 and 2018, vaguely invokes "unforeseen competing deadlines," and points to "the departure of a senior FOIA expert." Shiner Decl. ¶ 26. But these general assertions are not sufficient to justify the CIA's protracted processing schedule. For example, in *Middle East Forum v. U.S. Department of Homeland Security*, cited by the CIA, the court relied on "the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case," only where the agency provided a declaration with relevant and specific data points, such as the number of FOIA

---

[1] That FOIA request is the subject of related litigation before this Court. *Am. Civil Liberties Union v. Cent. Intelligence Agency*, No. 1:16-cv-01256 (D.D.C. filed June 21, 2016).

personnel, the number of FOIA requests over a multiple year period, the number of complex requests, the number of backlogged cases, and the number of pages that the agency is required to process each month by court orders in other cases. 297 F. Supp. 3d 183, 184–86 (D.D.C. 2018). Similarly, in *Seavey v. Department of Justice*, the court held that an agency "failed to justify its contention that processing particularly large requests, such as [the plaintiff's], at a faster pace would 'monopolize' its resources and delay the processing of smaller requests," where the agency only provided "some data showing the total number of annual FOIA and Privacy Act requests in recent years, the average number of documents that must be processed per request, the total number of outstanding requests and pages that have yet to be processed, and a smattering of court ordered production schedules." 266 F. Supp. 3d 241, 246–47 (D.D.C. 2017); *see also, e.g.*, *Clemente v. FBI*, 71 F. Supp. 3d 262, 267 (D.D.C. 2014) ("Without more information, this Court cannot conclude that obligations resulting from various lawsuits are more than the predictable workload of the agency."); *Elec. Privacy Info. Ctr. v. FBI*, 933 F. Supp. 2d 42, 48 (D.D.C. 2013) ("[W]ithout more elaboration as to the FBI's litigation-related processing obligations over specific periods of time, the Court cannot determine what, if any, impact these obligations should have on the Court's analysis of the FBI's FOIA workload."). The CIA has similarly failed here to support its claim that processing Plaintiffs' requests (within a total of twenty-six and nineteen months from the dates Plaintiffs submitted them) would unduly burden the agency.

Moreover, the CIA's own published FOIA statistics rebut its claims that its current workload is "unanticipated" and that, "[o]ver the last few years, 'the number of FOIA requests sent to [the] CIA has consistently increased.'" Defs.' Opp'n 8. Although FOIA requests to the CIA

did increase slightly from 2,572 to 2,726 between 2017 and 2018, these figures actually represent

a significant decrease "over the last few years," according to CIA's annual FOIA reports[2]:

| Fiscal Year | Number of Requests Received |
|---|---|
| 2009 | 2,863 |
| 2010 | 3,094 |
| 2011 | 3,269 |
| 2012 | 3,745 |
| 2013 | 4,573 |
| 2014 | 3,737 |
| 2015 | 3,618 |
| 2016 | 2,547 |
| 2017 | 2,572 |
| 2018 | 2,726 |

In related contexts, courts refuse to grant an agency additional time to process a FOIA

request if the agency cannot "show that the number of requests received in the relevant period was

truly unforeseen and remarkable." *Daily Caller News Found. v. FBI*, No. 18-1833 (CKK), 2019

WL 2411286, at *3 (D.D.C. June 7, 2019). Here, the CIA has not demonstrated that it is

experiencing anything "more than the predictable workload of the agency." *Id.* at *5 (quoting

*Clemente*, 71 F. Supp. 3d at 267).

---

[2] CIA Freedom of Information Act Annual Report: Fiscal Year 2018, at 7, https://perma.cc/CEH5-FR6Y; CIA Freedom of Information Act Annual Report: Fiscal Year 2017, at 7, https://perma.cc/H7VF-3USC; CIA Freedom of Information Act Annual Report: Fiscal Year 2016, at 6, https://perma.cc/6UBG-RZ6A; CIA Freedom of Information Act Annual Report: Fiscal Year 2015, at 8, https://perma.cc/S7AN-CURP; CIA Freedom of Information Act Annual Report: Fiscal Year 2014, at 6, https://perma.cc/JP7G-A4D7; CIA Freedom of Information Act Annual Report: Fiscal Year 2013, at 7, https://perma.cc/XK6K-CUZD; CIA Freedom of Information Act Annual Report: Fiscal Year 2012, at 7, https://perma.cc/NEU9-8GWT; CIA Freedom of Information Act Annual Report: Fiscal Year 2011, at 7, https://perma.cc/XC4G-KTKU; CIA Freedom of Information Act Annual Report: Fiscal Year 2010, at 7, https://perma.cc/E424-CQ5U; CIA Freedom of Information Act Annual Report: Fiscal Year 2009, at 7, https://perma.cc/UFL7-JLWB.

Second, in addition to substantially narrowing the scope of their requests, Pls.' Mot. 4, Plaintiffs have consented to the CIA's exclusion of draft manuscripts from processing, which should substantially reduce the number of pages to be processed, *id.* at 4–5, 9–10. As Plaintiffs noted in their motion, Defendant National Security Agency reduced its estimate of the number of responsive pages from 4,500 to fewer than 600, once draft manuscripts were excluded. *Id.* at 10 n.3. It is likely that the CIA's responsive pages contain a similar proportion of draft manuscripts. The CIA refuses, however, to provide this information, or *any* information regarding the number of actually responsive pages or records. *See* Pls.' Mot. 5–6; *infra* Part II.

Third, the CIA concedes that, going forward, it need only conduct its "normal review process." Defs.' Opp'n 8. The CIA states that it has already conducted "manual review of hard copy files" and "scanned into the CIA's FOIA record review system" all of its responsive records. *Id.* at 7. It also states that it has completed the task of "mak[ing] sure that duplicate documents were processed in a consistent manner." *Id.* In other words, the agency has already completed the tasks that the agency claims are burdensome. All that remains is for the agency to finally process records that Plaintiffs requested two years ago.

While the CIA argues that "the nature and potential sensitivities of the documentation requested" justify a lengthy review process, Defs.' Opp'n 8 (quoting Shiner Decl. ¶ 21), "courts often find that one to two months is sufficient time for an agency to process broad FOIA requests that may involve classified or exempt material." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 40 (D.D.C. 2006); *see also, e.g.*, *Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501, 503, 505 (S.D.N.Y. 2004) (ordering agencies to process within one month 17,000 to 20,000 pages responsive to a FOIA request seeking records related to the treatement of detainees held in U.S. custody abroad). And in this case, whatever burden Plaintiffs' proposed schedule

would impose is of the CIA's own making, given the months and months that it has already had to search for and process what will likely be, in the end, a relatively small volume of records. The sole case that Defendants cite for the contrary position is inapposite. *See* Defs.' Mot. 9 (citing *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1 (D.D.C. 2015)). In *Daily Caller v. U.S. Department of State*, the plaintiff was denied a preliminary injunction requiring the agency to produce within only twenty days all responsive, non-exempt records related to Secretary Hillary Clinton's use of a private email server. 152 F. Supp. 3d at 4–5. Unlike here, the agency "ha[d] yet to determine the total volume of potentially responsive records" and was deluged with "numerous" similar requests which "in turn begat extensive litigation against the State Department, with some three dozen cases stemming from these requests pending before this Court." *Id.* at 3–4.

Fourth, Defendants do not provide any evidence to support the claim that Plaintiffs' proposed processing schedule would "disadvantage[] other requestors by . . . unfairly leap-frogging them to the front of CIA's processing queue." Defs.' Opp'n 3, 9. Defendants fail to provide, for example, any information regarding how many outstanding FOIA requests predate Plaintiffs' requests, the first of which was submitted over two years ago.

## II.   The CIA has refused to meaningfully engage with Plaintiffs' good-faith attempts to negotiate a reasonable processing schedule.

It has been over two years since Plaintiffs submitted Request 1 and eighteen months since Plaintiffs submitted Request 2. In this time, Plaintiffs have attempted to negotiate in good faith a reasonable processing schedule with the CIA and, to that end, they have sought basic information related to the number and nature of responsive records. Pls.' Mot. 3–6. The CIA, however, delayed in providing much of this information, and it still refuses to provide information that would allow Plaintiffs to negotiate a mutually agreed-upon processing schedule.

For example, Plaintiffs have repeatedly requested an estimate of the number of *actually responsive pages* that the CIA has identified, Pls.' Mot. 6, but the CIA refuses to provide this information—despite the fact that it is routine for agencies to do so in FOIA cases. Instead, the CIA appears to base its protracted processing schedule on the number of *potentially responsive records* that it has identified, without identifiying the number of actually responsive records or pages.[3] It appears to be a relatively new phenomenon for agencies to provide the number of "potentially," as opposed to "actually," responsive records or pages in defending their proposed processing schedules. In Plaintiffs' short experience with it, this practice has allowed agencies to defend unjustifiably long processing schedules based upon misleadingly inflated estimates of the volume of records to be processed. For example, in this case, DHS initially identified "1,482 potentially responsive pages" for Request 2. Pls.' Mot. 9. Upon completing production, however, DHS revealed that it had determined that only 409 of those 1,482 pages—little more than a quarter—were actually responsive. Abdo Decl. Ex. A.[4] The Court should not credit the CIA's likely inflated estimate of how many potentially responsive records it must process.

The CIA also refuses to provide Plaintiffs with revised processing information—including the number of actually responsive records or pages, and an updated number of potentially responsive records—that takes into account the fact that Plaintiffs have consented to the exclusion

---

[3] While the government's brief states that there are "approximately 1,746 responsive records" to process, Defs.' Opp'n 3, the CIA's declaration states that these records are "*potentially* responsive" and must still be reviewed to determine whether they are *in fact* responsive, Shiner Decl. ¶¶ 22, 28 (emphasis added) ("CIA requires additional time in order to review documents to determine whether they . . . are responsive to Plaintiffs' requests . . . .").

[4] Similarly, in unrelated FOIA litigation brought by Plaintiff Knight Institute, the Department of State initially stated that it had reviewed approximately 28,000 pages, but later revealed that only 1,719 of those pages were "most likely responsive" to the plaintiff's request and needed to be processed. Order at 2, *Knight First Amendment Inst. at Columbia Univ. v. U.S. Dep't of Homeland Sec.*, No. 1:17-cv-07572 (S.D.N.Y. May 18, 2018), ECF No. 63.

of draft manuscripts in order to minimize the burden of processing. Pls.' Mot. at 4, 9–10. Plaintiffs have reason to believe that the exclusion of draft manuscripts will substantially reduce the number of pages that must be reviewed for responsiveness and subsequently processed. *Id.* at 10 n.3. In their brief, Defendants do not acknowledge Plaintiffs' good-faith exlusion of these responsive records, let alone provide this revised processing information.

Moreover, contrary to Defendants' representations, Plaintiffs have not failed to respond to any communication or request for clarification from the CIA—and, in fact, it is the agency that has repeatedly failed to meaningfully engage with Plaintiffs. Defendants assert that "Plaintiffs have not responded to the CIA's October 31, 2017 letter" seeking "to narrow the scope of Request 1 to records related to the publications of the individuals named in Request 1." Defs.' Opp'n 4 (citations and quotation marks omitted). However, Plaintiffs agreed to this specific proposal by email dated August 31, 2018. Pls.' Mot. 4; *see also* Abdo Decl. Ex. B ("With respect to Request 1, we consent to CIA's proposal to limit searches to records relating to the specific publications listed."). Defendants also assert that Plaintiffs have not responded to two letters, dated March 1, 2018 and May 11, 2018, "memorializing the agency's understanding of the parties' agreed-upon modifications to Request 2." Defs.' Opp'n 5. Yet Plaintiffs responded to both letters by email, dated May 18, 2018, to counsel for Defendants. Abdo Decl. Ex. C. In this email, Plaintiffs stated that they did not have any record of receiving the CIA's March 1, 2018 letter and they requested that counsel for CIA forward a copy of that letter to Plaintiffs. *Id.* Plaintiffs also explained that, since Request 2 was then the subject of active litigation, they would not respond directly to the CIA regarding its May 11, 2018 letter, and they instead included their substantive response to that letter in the body of the email to counsel for Defendants. *Id.* Plaintiffs re-sent this email and reiterated their position with respect to Request 2 to counsel for Defendants on August 31, 2018.

*Id.* Ex. B. Plaintiffs have since followed up to seek clarification regarding the scope of the CIA's searches for Requests 1 and 2.

Despite Plaintiffs' willingness to narrow their requests, the CIA has refused to provide basic processing information or meaningfully engage with Plaintiffs' good-faith attempts to negotiate a reasonable schedule for the processing and production of responsive records.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court issue an order requiring the CIA to complete the processing of responsive records by July 16, 2019. In the alternative, Plaintiffs respectfully request a status conference at the Court's earliest convenience to resolve this continuing impasse regarding the processing and production of responsive records by the CIA.

Dated: June 13, 2019

Respectfully submitted,

 /s/ *Jameel Jaffer*
Jameel Jaffer (D.D.C. Bar No. MI0067)
Alex Abdo (admitted *pro hac vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
T: 646.745.8500
jameel.jaffer@knightcolumbia.org
alex.abdo@knightcolumbia.org

Brett Max Kaufman (D.D.C. Bar No.
  NY0224)
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union of
  the District of Columbia
915 15th Street, NW
Second Floor
Washington, D.C. 20005
T: 202.601.4266
artspitzer@aclu-nca.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served to all counsel of record via the Court's CM/ECF system on this 13th day of June, 2019.

*/s/ Jameel Jaffer*
Jameel Jaffer